## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NORTH DAKOTA

## EASTERN DIVISION

| | |
|---|---|
| LuAnne Janssen, as Personal Representative of the Estate of Warren S. Lindvold, | Civ. Action No.  3:19-cv-00079 |
| Plaintiff, | **AMENDED COMPLAINT** |
| vs. | |
| City of Valley City, Christopher Olson, Wade Hannig, Barnes County, Barnes County Sheriff Randy McClaflin, Julie Forsman, Jenna Jochim, Richard Chase, Bruce Potts, Jesse Burchill, Barnes County Ambulance, Inc., National Medical Resources, Inc., Mercy Hospital of Valley City d/b/a CHI Mercy Health, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

## <u>JURISDICTION</u>

1.     This action arises under Title 42 of the United States Code (U.S.C) Sections 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343.  Further Plaintiff asserts a cause of action under 42 U.S.C. § 1395dd. The aforementioned statutory and constitutional provisions confer original jurisdiction of this court over this cause of action.  Plaintiff also asserts state law claims which this Court has jurisdiction over pursuant to 28 U.S.C. § 1367.

1

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because North Dakota is the judicial district in which the events and omissions giving rise to the claim occurred.

## PARTIES

3.      The Plaintiff, LuAnne Janssen, acting as the Personal Representative of the Estate of Decedent Warren S. Lindvold, and as Administrator of the Estate of Warren S. Lindvold, was and still is a resident of the City of Boulder, State of Colorado.

4.      On or about the 27th day of July, 2018, the Plaintiff, LuAnne Janssen, was appointed Personal Representative of the Estate of Warren S. Lindvold ("Warren Lindvold") pursuant to an Order of the Barnes County District Court, in the County of Barnes, State of North Dakota.  The Plaintiff having accepted the duties of Personal Representative is thereupon duly qualified, and thereafter acted, and is still acting, as said Personal Representative.

5.      The City of Valley City ("Valley City") is an incorporated city organized and existing under the laws of the State of North Dakota.  The Valley City Police Department ("Valley City Police") is a division of Valley City, which at all times was operated, managed, maintained, supervised, and controlled by Valley City, which is a governmental organization of the State of North Dakota.

6.      At all times material herein Defendant Christopher Olson ("Olson") was an employee and agent of Defendant Valley City acting as an officer of the Valley City Police Department.

7.      At all times material herein Defendant Wade Hannig ("Hannig") was an employee and agent of Defendant Valley City acting as officer of the Valley City Police Department.

8.     Defendant Barnes County is an incorporated governmental body organized under the existing laws of the State of North Dakota.  Barnes County is charged by the laws of the State of North Dakota to maintain the Barnes County Correctional Facility, better known as the Barnes County Jail, and is responsible for the conditions of confinement and the health and safety of persons incarcerated at the Barnes County Jail.

9.     Defendant Barnes County Sheriff Randy McClaflin ("Sheriff McClaflin") is, and was at all times relevant to this action, the Chief Executive Officer of the Barnes County Jail and is and was responsible for the day-to-day operations of the Barnes County Jail, and in his official capacity has custody, control, and charge of the Barnes County Jail and the inmates confined in the Barnes County Jail.

10.     At all times material herein Defendant Jenna Jochim ("Jochim") is, and was employed by Barnes County as a correctional officer assigned to the Barnes County Jail. Defendant Jochim is and was under the supervision and control of Defendants Barnes County and Sheriff McClaflin at all times relevant to this action.

11.      At all times material herein Defendant Richard Chase ("Chase") is, and was employed by Barnes County as a correctional officer assigned to the Barnes County Jail. Defendant Chase is and was under the supervision and control of Defendants Barnes County and Sheriff McClaflin at all times relevant to this action.

12.      At all times material herein Defendant Bruce Potts ("Potts") is, and was employed by Barnes County as a correctional officer assigned to the Barnes County Jail. Defendant Potts is and was under the supervision and control of Sheriff McClaflin at all times relevant to this action.

13.    At all times material herein Defendant Jesse Burchill ("Burchill") is, and was employed by Barnes County as a correctional officer assigned to the Barnes County Jail. Defendant Burchill is and was under the supervision and control of Sheriff McClaflin at all times relevant to this action.

14.    Barnes County Ambulance, Inc. ("Barnes Ambulance") is, and was a corporation duly organized and existing under and by virtue of the laws of the State of North Dakota, and maintains an office for the transaction of business located within the County of Barnes and the State of North Dakota.

15.    Through its agents and employees Barnes Ambulance provided emergency medical services to Warren Lindvold on July 15, 2018.

16.    Sarah Rippley ("Rippley") is, and was at all times relevant to this matter, an emergency medical services professional licensed and acting as an Emergency Medical Technician ("EMT") Paramedic employed by Barnes Ambulance.

17.    Kaitlyn Anderson ("Anderson") is, and was at all times relevant to this matter, an emergency medical services professional licensed and acting as an Emergency Medical Technician ("EMT") Paramedic employed by Barnes Ambulance.

18.    Scott Miller ("Miller") is, and was at all times relevant to this matter, an emergency medical services professional licensed and acting as an Emergency Medical Technician ("EMT") Paramedic employed by Barnes Ambulance.

19.    As agents and employees of Barnes Ambulance Rippley, Anderson, and Miller were dispatched to the Barnes County Jail to provide emergency medical services to Warren Lindvold.

4

20.     At all times material herein Defendant Mercy Hospital of Valley City, operating under the trade name of CHI Mercy Health ("Mercy Hospital"), was a corporation, duly organized and existing under and by virtue of the laws of the State of North Dakota, providing medical services, including an Emergency Room, located in Valley City, North Dakota.

21.     At all times material herein Defendant National Medical Resources, Inc. ("Medical Resources") was a corporation, duly organized and existing under and by virtue of the laws of the State of North Dakota, providing temporary medical staff to Defendant Mercy Hospital.

22.     On July 15, 2018, Mark Klabo ("Klabo"), a Physician's Assistant, duly licensed to practice in the State of North Dakota provided medical care and treatment to Warren Lindvold in the Mercy Hospital Emergency Room.

23.     At all times material herein Klabo was acting as an employee and agent of both Defendant Mercy Hospital and Defendant Medical Resources.

23.1.   At all times material herein, Defendant Julie Forsman ("Forsman") was the Facility Supervisor of the Barnes County Correctional Facility and was responsible for the day-to-day operations of the Barnes County Jail. In her official capacity as Facility Supervisor, she had custody, control, and charge of the Barnes County Jail and the pretrial detainees confined in the Barnes County Jail.

23.2.   At all times material herein, Defendant Forsman was acting under color of state law during the period in question.

23.3.   At all times material herein, Defendant Forsman was acting as agent and/or employee of Defendant Barnes County in the operation of the Barnes County Jail.

## STATEMENT OF FACTS

24.     Plaintiff realleges all prior paragraphs of this Complaint and incorporates the same herein by this reference.

25.     On July 15, 2018, Decedent Warren S. Lindvold, a 72 year old man with chronic spinal disease, was detained and arrested by Valley City Police Officers Defendant Olson and Defendant Hannig, and transported to the Barnes County Jail.  Seven hours later Warren Lindvold was transported by ambulance to Defendant Mercy Hospital after having been left for hours paralyzed on the floor of his jail cell at the Barnes County Jail with a fractured cervical spine and unable to feel or move his arms or legs.  Warren Lindvold was transported from Defendant Mercy Hospital to Sanford Health in Fargo, North Dakota, where he underwent emergency neurosurgery.  Warren Lindvold died days later as a result of his fractured cervical spine.

26.     On or about July 15, 2018, Defendant Olson participated in the arrest, transport, and incarceration of Warren Lindvold.  Defendant Olson acted individually and in concert with other defendants to commit tortious acts against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe fatal and non-fatal injuries, including but not limited to, a fractured spine and death.  Plaintiff's claims are against Defendant Olson both in his official and unofficial capacities.

27.     Defendant Olson aided and encouraged other defendants to commit tortious acts against Warren Lindvold and Defendant Olson ratified and adopted the tortious acts of other defendants against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and

death.   Plaintiff's claims are against Defendant Olson both in his official and unofficial capacities.

28.     On or about July 15, 2018, Defendant Hannig participated in the arrest, transport, and incarceration of Warren Lindvold.  Defendant Hannig acted individually and in concert with other defendants to commit tortious acts against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe fatal and non-fatal injuries, including but not limited to, a fractured spine and death.  Plaintiff's claims are against Defendant Hannig both in his official and unofficial capacities.

29.     Defendant Hannig aided and encouraged other defendants to commit tortious acts against Warren Lindvold and Defendant Hannig ratified and adopted the tortious acts of other defendants against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and death.   Plaintiff's claims are against Defendant Hannig both in his official and unofficial capacities.

30.     Defendant Sheriff McClaflin is, and was at all times relevant to this action, responsible for maintenance of policies, customs, or practices, and the hiring, training, supervision, and discipline of Barnes County Correctional Officers ("Correctional Officers").  Plaintiff's claims are against Defendant Sheriff McClaflin both in his official and unofficial capacities.

30.1.   Defendant Forsman formulated and was responsible for overseeing policies, practices, regulations, protocols, and customs at the Barnes County Jail, and had the authority for hiring, screening, training, supervising, and disciplining deputies and correctional officers.

Plaintiff's claims are against Defendant Julie Forsman both in her official and unofficial capacities.

31.     On or about July 15, 2018, Defendant Jochim was working at the Barnes County Jail.  Defendant Jochim acted individually and in concert with other defendants to commit tortious acts against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and death.  Plaintiff's claims are against Defendant Jochim both in her official and unofficial capacities.

32.     Defendant Jochim aided and encouraged other defendants to commit tortious acts against Warren Lindvold and Defendant Jochim ratified and adopted the tortious acts of other defendants against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and death.  Plaintiff's claims are against Defendant Jochim both in her official and unofficial capacities.

33.     On or about July 15, 2018, Defendant Chase was working at the Barnes County Jail.  Defendant Chase acted individually and in concert with other defendants to commit tortious acts against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and death. Plaintiff's claims are against Defendant Chase both in his official and unofficial capacities.

34.     Defendant Chase aided and encouraged other defendants to commit tortious acts against Warren Lindvold and Defendant Chase ratified and adopted the tortious acts of other defendants against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and

8

death.  Plaintiff's claims are against Defendant Chase both in his official and unofficial capacities.

35.     On or about July 15, 2018, Defendant Potts was working at the Barnes County Jail.  Defendant Potts acted individually and in concert with other defendants to commit tortious acts against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and death. Plaintiff's claims are against Defendant Potts both in his official and unofficial capacities.

36.     Defendant Potts aided and encouraged other defendants to commit tortious acts against Warren Lindvold and Defendant Potts ratified and adopted the tortious acts of other defendants against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and death.  Plaintiff's claims are against Defendant Potts both in his official and unofficial capacities.

37.     On or about July 15, 2018, Defendant Burchill was working at the Barnes County Jail.  Defendant Burchill acted individually and in concert with other defendants to commit tortious acts against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and death.  Plaintiff's claims are against Defendant Burchill both in his official and unofficial capacities.

38.     Defendant Burchill aided and encouraged other defendants to commit tortious acts against Warren Lindvold and Defendant Burchill ratified and adopted the tortious acts of other defendants against Warren Lindvold that deprived him of his civil rights and caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to, a fractured spine and

death. Plaintiff's claims are against Defendant Burchill both in his official and unofficial capacities.

39.     The actions of Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill were documented by contemporaneous audio and video recordings of their actions and communications captured by recording equipment in Defendant Olson's patrol vehicle, the Valley City Law Enforcement Center, and the Barnes County Jail.

40.     On or about July 15, 2018, Defendant Olson arrested Warren Lindvold without a duly issued and authorized arrest warrant.

41.     On or about July 15, 2018, Defendant Olson arrested Warren Lindvold without probable cause to believe that Warren Lindvold had committed a crime.

42.     During his detention, but prior to his arrest, Warren Lindvold informed Defendants Olson and Hannig that he suffered from arthritis and ankylosing spondylitis in his neck.

43.     Defendant Hannig was present with Defendant Olson during Warren Lindvold's detention and arrest.

44.     When Defendant Olson, in preparation to conduct sobriety field testing, asked Warren Lindvold whether he had any recent head injuries, Warren Lindvold informed Defendant Olson that he suffered from arthritis and ankylosing spondylitis in his neck.

45.     During Defendant Olson's pre-arrest detention of Warren Lindvold, Warren Lindvold repeatedly reached for and rubbed his neck and shoulders telling Defendant Olson that he was having significant excruciating pain because of his arthritis and ankylosing spondylitis in his neck.

10

46.     Warren Lindvold's chronic arthritis and ankylosing spondylitis had fused his neck making it impossible for him to rotate his head and neck left or right.

47.     Defendants Olson and Hannig were aware that Warren Lindvold's arthritis and ankylosing spondylitis made it impossible for Warren Lindvold to rotate his head and neck when they arrested Warren Lindvold.

48.     It was readily apparent to and known by Defendants Olson and Hannig that Warren Lindvold's arthritis and ankylosing spondylitis made it impossible for Warren Lindvold to rotate his head and neck when they arrested Warren Lindvold.

49.     During his pre-arrest detention of Warren Lindvold, Defendant Olson demanded that Warren Lindvold provide Defendant Olson with multiple breath samples for testing pursuant to N.D.C.C. § 39-20-14.

50.     After Defendant Olson repeatedly required Warren Lindvold to blow into a breath testing device, Warren Lindvold again rubbed between his shoulders and informed Defendant Olson that he was experiencing significant severe pain in his shoulders and neck.

51.     Warren Lindvold agreed to, and did provide, Defendant Olson with multiple breath samples for testing in accordance with Defendant Olson's demands.

52.     One of the breath samples that Warren Lindvold provided reported that Warren Lindvold had a blood alcohol concentration of 0.03% by weight.

53.     Pursuant to North Dakota law, N.D.C.C. § 39-20-07(1), individuals having an alcohol concentration of not more than 0.05% by weight are presumed not to be under the influence of alcohol.

11

54.     Defendant Olson ignored the blood alcohol concentration of 0.03% by weight, withheld the results of the breath test from Warren Lindvold, and illegally arrested Warren Lindvold without  a warrant.

55.     On at least two occasions Warren Lindvold asked Defendant Olson what his test results were.

56.     Defendant Olson falsely informed Warren Lindvold that Warren Lindvold had failed to provide a breath sample for testing.

57.     Warren Lindvold asked Defendant Olson what the results of his breath test were.

58.      Defendant Olson told Warren Lindvold that Warren Lindvold did not take a breath test and withheld the result from the pre-arrest breath test which showed that Warren Lindvold had a blood alcohol concentration of 0.03% by weight.

59.     After Warren Lindvold was arrested Defendant Olson requested that Warren Lindvold submit to another breath test, a post-arrest Intoxilyzer test.

60.     Warren Lindvold agreed to take the requested breath test and told Defendant Olson at least two times that he would  take the post-arrest breath test.

61.     Warren Lindvold cooperated with Defendants Olson and Hannig prior to his arrest.

62.     Warren Lindvold never attempted to resist or obstruct Defendants Olson and Hannig during his arrest.

63.      Warren Lindvold cooperated with Defendants Olson and Hannig after his arrest.

64.     Warren Lindvold did not verbally resist Defendants Olson and Hannig prior to or during his arrest.

65.     Warren Lindvold did not physically resist Defendants Olson and Hannig prior to or during his arrest.

66.     Defendant Olson decided to handcuff Warren Lindvold's hands behind his back after he was arrested.

67.     Warren Lindvold was cooperative, offered no verbal or physical resistance, and allowed Defendant Olson to handcuff his hands behind his back.

68.     Immediately after Defendant Olson handcuffed Warren Lindvold's hands behind his back Warren Lindvold bent over and winced in pain.

69.     Immediately after Defendant Olson handcuffed Warren Lindvold's hands behind his back Warren Lindvold told Defendants Olson and Hannig that his hands being handcuffed behind his back was causing Warren Lindvold significant, severe, excruciating pain.

70.     Immediately after Defendant Olson handcuffed Warren Lindvold's hands behind his back Warren Lindvold had difficulty standing with his hands handcuffed behind his back because of the significant, severe, excruciating pain.

71.     Warren Lindvold tried to use his hands, which were handcuffed behind his back, to support himself by putting his back against the patrol vehicle.

72.     Defendants Olson and Hannig knew that Warren Lindvold was in pain and having difficulty standing as a result of his hands being handcuffed behind his back.

73.     Warren Lindvold repeatedly asked Defendants Olson and Hannig to remove the handcuffs.

74.     Seventy-two year old Warren Lindvold assured Defendants Olson and Hannig that he was not going to hurt them.

75.     Defendants Olson and Hannig ignored Warren Lindvold's obvious pain, the fact that Warren Lindvold was having difficulty standing, and his pleas for help.

76.     Defendants Olson and Hannig refused to remove Warren Lindvold's  handcuffs.

77.     Warren Lindvold asked Defendants Olson and Hannig why they had handcuffed his hands behind his back.

78.     Defendants Olson and Hannig told Warren Lindvold that handcuffing his hands behind his back was simply "part of the process."

79.     Warren Lindvold cooperated with the demands of Defendants Olson and Hannig to the best of his ability.

80.     Defendants Olson and Hannig ignored Warren Lindvold's repeated pleas, obvious physical distress and complaints, and refused to remove the handcuffs or reposition the handcuffs by handcuffing Warren Lindvold's hands in front of him.

81.     Defendants Olson and Hannig demanded that Warren Lindvold walk back to the patrol vehicle with his hands handcuffed behind his back

82.     Because Warren Lindvold was unable to walk with his arms handcuffed behind his back Defendant Olson intentionally and needlessly employed a pain compliance hold on Warren Lindvold.  Defendant Olson intentionally twisted Warren Lindvold's wrist up behind his back with one hand, while forcing Warren Lindvold's elbow down with his other hand.

83.     The pain compliance employed by Defendant Olson immediately had the intended effect on Warren Lindvold causing him to scream out in pain.

84.     Defendant Hannig ratified and adopted Defendant Olson's use of the pain compliance hold on a defenseless Warren Lindvold, telling Warren Lindvold that pain in his wrist did not prevent him from walking.

85.     Defendants Olson and Hannig omitted any mention of Defendant Olson's use of the pain compliance hold in their written reports.

86.     Defendant Olson's intentional infliction of pain did not improve Warren Lindvold's ability to stand or walk while his hands were handcuffed behind his back.

87.     Warren Lindvold was physically unable to comply with Defendant Olson's commands to walk.

88.     Defendants Olson and Hannig were aware that Warren Lindvold had pre-existing physical limitations because of his arthritis and ankylosing spondylitis and that handcuffing Warren Lindvold's hands behind his back had caused Warren Lindvold immediate significant pain.

89.     Warren Lindvold demonstrated a physical inability to walk or stand while his hands were handcuffed behind his back.

90.     Warren Lindvold's repeated pre-arrest description of his pain and physical limitations and his physical condition put Defendants Olson and Hannig on notice that Warren Lindvold was not a proper candidate for handcuffs.

91.     Warren Lindvold's repeated pre-arrest description of his pain and physical limitations, his physical condition, his obvious pain, and his cooperation put Defendants Olson and Hannig on notice that handcuffing Warren Lindvold's hands behind his back was not necessary.

92.     Warren Lindvold's repeated pre-arrest description of his pain and physical limitations, his physical condition, his obvious pain, and his cooperation put Defendants Olson and Hannig on notice that handcuffing Warren Lindvold's hands behind his back was not reasonable.

93.     Defendants Olson and Hannig ignored all of Warren Lindvold's pleas for help and his obvious agony.

94.     Knowing that Defendant Olson's initial pain compliance hold did not improve Warren Lindvold's ability to walk with his hands handcuffed behind his back, Defendant Olson decided to unnecessarily inflict additional pain on Warren Lindvold by using a punishing hold to forcefully lever Warren Lindvold's handcuffed arms vertically up behind his back.

95.     When Defendant Olson intentionally and forcefully levered Warren Lindvold's handcuffed arms vertically up behind his back Warren Lindvold immediately screamed in extreme pain.

96.     Defendant Hannig ratified and adopted Defendant Olson's intentional forceful levering of Warren Lindvold's handcuffed arms vertically up behind his back when Defendant Hannig assisted Defendant Olson in grabbing Warren Lindvold by the arms, dragging him to the side of the patrol vehicle, and hoisting him into the patrol vehicle.

97.      Warren Lindvold begged and pleaded for Defendants Olson and Hannig to stop dragging him.

98.     Warren Lindvold begged and pleaded for Defendants Olson and Hannig to stop wrenching his handcuffed arms up behind his back.

99.     The punishment holds employed by Defendant Olson to intentionally inflict pain and to vertically hoist Warren Lindvold's handcuffed arms behind his back caused Warren Lindvold significant injury causing or contributing to the neck fracture that caused Warren Lindvold's death.

100.     The punishment hold employed by Defendants Olson and Hannig to hoist Warren Lindvold's handcuffed arms behind his back and drag him to the patrol vehicle caused Warren

Lindvold significant injury thereby causing or contributing to the fracture of his neck that caused Warren Lindvold's death.

101.    Defendants Olson and Hannig repeatedly ordered Warren Lindvold to stand up.

102.    Warren Lindvold explained to Officers Olson and Hannig that he could not stand with his hands handcuffed behind his back.

103.    After Defendants Olson and Hannig drug Warren Lindvold to the patrol vehicle, Defendants Olson and Hannig forcibly loaded Warren Lindvold into the back seat because he was unable to stand or lift his legs or slide into the patrol car.

104.    Defendant Olson entered the back seat of the patrol vehicle from the driver's side and pulled on Warren Lindvold's handcuffed arm dragging Warren Lindvold into the vehicle.

105.    Warren Lindvold immediately screamed in pain when Defendant Olson dragged him into the vehicle using an arm handcuffed behind his back.

106.    Warren Lindvold was in obvious agony as he begged for help and begged to have his arms released.

107.    Warren Lindvold informed Defendant Olson that he was in constant pain and he felt like he was going to die.

108.    Defendant Olson ignored Warren Lindvold's pleas for help.

109.    Defendant Olson terminated the audio and video recording approximately three minutes after he had dragged Warren Lindvold into the patrol vehicle.

110.    Before Defendant Olson turned off the recording device Warren Lindvold begged Defendant Olson to remove the handcuffs seven times.

111.    In response to Warren Lindvold's pleas Defendant Olson callously stated: "You're not going to get out of handcuffs."

17

112.    Beginning at the time of the traffic stop and throughout the pre-arrest period Defendants Olson and Hannig observed Warren Lindvold repeatedly reach to his shoulder and neck areas gesturing and demonstrating that he was in significant pain while he repeatedly described his pain and the cause and source of his pain.

113.    Warren Lindvold's painful and limiting chronic arthritis and his back and neck condition were so readily apparent they were obvious to any reasonable person even without Warren Lindvold's repeated explanations describing his physical conditions and pain.

114.    After Warren Lindvold was arrested and handcuffed he repeatedly explained to Defendants Olson and Hannig that he was having difficulty, was in great pain, and was unable to stand or walk with his arms handcuffed behind his back.

115.    The exclamations, screams, shouts, actions, and statements made by Warren Lindvold when he was arrested, handcuffed, subjected to pain compliance holds, had his handcuffed arms hoisted behind his back, and dragged to and forcibly loaded into the patrol vehicle by Defendants Olson and Hannig made it obvious to any objective person that Warren Lindvold was suffering a medical emergency and needed immediate medical attention.

116.    Defendants Olson and Hannig were aware of Warren Lindvold's condition and need for medical attention.

117.     Defendants Olson and Hannig consciously and deliberately disregarded Warren Lindvold's condition and need for medical attention.

118.    While enroute to the police station, Warren Lindvold informed Defendant Olson that his limbs were numb.

119.    At the police station Warren Lindvold was unable to exit the patrol vehicle and was physically "removed" from the vehicle by Defendant Olson.

120.    When Defendant Olson physically removed Warren Lindvold from the patrol vehicle Warren Lindvold was unable to stand and fell to the ground.

121.    When Warren Lindvold's hands were uncuffed at the police station he tried to steady himself by reaching for Defendant Olson's arm to hold himself up before falling to the floor.

122.    Warren Lindvold was unable to walk or stand on his own when he was physically removed from the patrol vehicle by Defendant Olson.

123.    Because Warren Lindvold was unable to walk or stand on his own, Defendant Olson again handcuffed Warren Lindvold's arms and dragged Warren Lindvold backwards by his handcuffed arms to the patrol vehicle and forcibly loaded him into the back seat.

124.    Defendant Olson admitted that he used considerable effort to force Warren Lindvold back into the patrol vehicle.

125.    Knowing that Warren Lindvold was physically unable to stand and walk the actions of Defendants Hannig and Olson to re-handcuff Warren Lindvold, drag him to the patrol vehicle, and forcibly load him into the vehicle were knowing, intentional, reckless, malicious, deliberately indifferent, and objectively unreasonable.

126.    The actions of Defendants Hannig and Olson to re-handcuff Warren Lindvold, drag him to the patrol vehicle, and forcibly load him into the vehicle caused extreme pain and cuts and lacerations to Warren Lindvold's wrists and arms.

127.    Warren Lindvold was bleeding from the cuts and lacerations on his wrists and arms as Defendants Olson and Hannig transported Warren Lindvold from the police station to the Barnes County Jail.

128.    Defendants Olson and Hannig were aware that Warren Lindvold had suffered cuts and lacerations on his hands and wrists.

129.    Defendants Olson and Hannig were aware that Warren Lindvold was bleeding from the cuts and lacerations on his hands and wrists.

130.    Defendants Olson and Hannig took no action to provide Warren Lindvold with any type of medical care or attention for the bloody cuts and lacerations visible on Warren Lindvold's hands and wrists.

131.    Defendants Olson and Hannig casually retrieved disposable wipes and used them to clean Warren Lindvold's blood off their hands.

132.    Defendant Olson decided that he would not allow Warren Lindvold to take an evidentiary breath test, despite Warren Lindvold repeatedly telling Defendant Olson that he would take another breath test.

133.    Defendant Olson decided that because Warren Lindvold was physically unable to walk or stand at the police station, that Warren Lindvold had refused to take the breath test.

134.    At no time did Warren Lindvold refuse to provide breath testing.

135.    Warren Lindvold repeated his request to be given an evidentiary breath test after Defendant Olson informed Warren Lindvold that he had refused a breath test.

136.    Defendant Olson was aware that Section 39-08-01(2)(b) of the North Dakota Century Code provides as follows:

> An individual is not subject to an offense under this section for refusal to submit to an onsite screening test under section 39-20-14 if the person submits to a chemical test under section 39-20-01 . . . for the same incident.  Upon the individual's refusal to submit to an onsite screening test, the police officer shall inform the individual that the individual may remedy the refusal if the individual takes a chemical test under 39-20-01 . . . for the same incident.

137.    Defendant Olson intentionally, maliciously, and unlawfully refused to advise Warren Lindvold as required by North Dakota law.

138.    Defendant Olson wrongly, fraudulently, intentionally, and maliciously issued Warren Lindvold a Report and Notice pursuant to Chapter 39-20 of the North Dakota Century Code to revoke his driving privileges.

139.    Defendant Olson elected to issue Warren Lindvold a Report and Notice pursuant to N.D.C.C. § 39-20.

140.    The Report and Notice served as notice that Warren Lindvold's driving privileges would be revoked without further notice and would ultimately result in the commencement of a civil administrative legal license proceeding to revoke Warren Lindvold's driving privileges.

141.    Defendant Olson falsely, intentionally, fraudulently, and maliciously reported that Warren Lindvold refused both the pre-arrest and post-arrest breath tests.

142.    Defendant Olson disregarded the mandatory language of N.D.C.C. § 39-08-01, refused to advise Warren Lindvold as required by law depriving Warren Lindvold of his statutory rights, and refused to allow Warren Lindvold to remedy any alleged refusal.

143.    Defendant Olson subsequently issued Warren Lindvold a Report and Notice, which indicated that Warren Lindvold had refused the tests.

144.    Defendant Olson knew that, pursuant to North Dakota law, the consequences of his action for issuing the Report and Notice representing a "test" refusal would result in a greater consequence to Warren Lindvold than would have occurred if Warren Lindvold and been allowed to take the breath as Warren Lindvold had requested and agreed to do.

145.    Warren Lindvold had tested considerably below the legal limit and would not have been subject to a driver's license suspension or arrest had Defendant Olson not disregarded

North Dakota laws.   Olson unlawfully prevented Warren Lindvold from submitting to an evidentiary test.

146.    Defendant Olson falsely, maliciously, intentionally, and fraudulently issued Warren Lindvold a Report and Notice pursuant to N.D.C.C. § 39-20 in order to commence a legal proceeding to wrongly revoke Warren Lindvold's driving privileges, and included in the Report and Notice information he certified as true, despite knowing it to be false and knowing officials would rely on said false information.

147.    Defendant Olson then denied Warren Lindvold an opportunity to "remedy" the alleged refusal, despite Warren Lindvold's requests to take the test.

148.    After leaving the police station Defendant Olson transported Warren Lindvold to the Barnes County Jail.

149.    During the transport to the Barnes County Jail, Warren Lindvold was in obvious pain.  When Defendant Olson suddenly stopped the patrol vehicle Warren Lindvold cried out in pain and when the vehicle hit a bump it again caused Warren Lindvold to cry out in pain.

150.    Upon arrival at the Barnes County Jail, Defendant Olson placed Warren Lindvold into the care and custody of Defendants Barnes County, Julie Forsman, Sheriff McClaflin, Jochim, and Chase.

151.    Barnes County has a history of abuse of inmates by correctional officers, failure to monitor inmates, failing to train correctional officers, employing untrained correctional officers, and incarcerating people in a facility that has repeatedly failed state inspections, was neither safe, nor satisfied the minimum standards imposed by rule and by law.

151.1. Defendant Forsman acted with deliberate indifference towards Warren Lindvold's basic medical needs in violation of the United States Constitution when she failed to adequately

and properly train, supervise, and discipline the Barnes County Jail staff, including the employees and correctional officers who refused to provide adequate and appropriate medical care and supervision of Warren Lindvold.

152.    At the time of Warren Lindvold's incarceration, the Barnes County Jail was subject to a minimum mandatory 12 month closure order that had been in effect for seven months and was issued by the Director of the North Dakota Department of Corrections and Rehabilitation ("Department of Corrections") on December 18, 2017.

153.    The closure order had been issued against the Barnes County Jail because Defendants Barnes County, Forsman, and Sheriff McClaflin had failed to comply with the state laws and minimum standards for correctional facilities.

154.    The Barnes County Jail had failed 43 out of the 100 requirements for compliance established by the North Dakota Correctional Standards.

155.    The failed requirements of the Barnes County Jail particularly relevant to causing Warren Lindvold's death, include, but are not limited to:

- Failure of staff supervisors to conduct patrols;
- Failure to have a policy for transferring medical records when inmates are transferred;
- Failure to train and provide any documentation that employees had completed <u>health care training</u> to be able to "respond to emergency health related situations" or to "recognize signs and symptoms and knowledge of action required in potential emergencies", methods of obtaining medical assistance, or completed training on procedures for transfer of prisoners to appropriate medical facilities or health care providers.  (See Closure Order 12/18/17);
- Failure to properly supervise inmates, failure to conduct sufficient inmate inspection rounds – those that did occur were not thorough or often enough – officers failed to go into the tiers or contact each inmate and failed to document the rounds;
- Failure of intake procedures and training of correctional officers having to do with inquiring into "current illness and health problems";
- Failure to train and give inmates an orientation that would give them direction on "health care procedures and how to access health care";

23

- Failure to give staff health care training on how to recognize and respond to health related situations;
- Non-compliance with requirement that Correctional Officers complete North Dakota Peace Officers Standards and Training within one year; Defendant Jochim was not trained; and
- Failure to comply with facility requirements imposed by rule and by statute that required Inmates to be supervised on a twenty-four hour basis by trained facility staff and that "Correctional facility staff shall be located in proximity to inmate living areas to permit the staff to hear and respond promptly to calls for help."  N.D.C.C. § 12-44.1-13.

156.    On January 30, 2018, the Department of Corrections conducted a site inspection as part of the closure order.

157.    As a result of the January 30, 2018 inspection the Department of Corrections sent a letter of reprimand to Defendant Sheriff McClaflin on February 2, 2018, stating:

> A noted concern we still do have is the staff compliance with making proper rounds and inmate count in the BCCF.  It appears all staff may not be walking into the tiers to visually check on each individual as required.  This was discussed during our initial visit and they were noncompliant with the standard involving Inmate count.  This is a life safety issue and must be corrected immediately.  We still recommend that count be done with a daily roster and staff must physically walk into each tier and log that they saw each individual or procedures are developed to ensure each inmate is visually observed as required by standard.

158.    The Department of Corrections conducted an unannounced inspection of the Barnes County Jail on July 12, 2018, three days before Warren Lindvold's incarceration.  The inspection was conducted by Department of Corrections medical officer Jennifer Gronos.  Her report stated:  "Upon entrance this writer observed that they were working short staffed.  They had two correctional officers instead of three."

159.    On July 15, 2018, while Warren Lindvold was under the care and control of Defendants Barnes County, Sheriff McClaflin, and Forsman. Defendants Barnes County, Sheriff McClaflin, and Forsman allowed the Barnes County Jail to operate without the minimum staff required by the Department of Corrections.

24

160.    On July 15, 2018, when Warren Lindvold was brought to the Barnes County Jail only two correctional officers were on duty.

161.    During the final two hours that Warren Lindvold was knowingly left paralyzed and unattended for hours on the jail floor by Defendant Potts before an ambulance was called, Barnes County Jail had only one correctional officer present and on duty.

161.1   Defendant Potts, the only correctional officer present and on duty, did not go into Warren Lindvold's jail cell until another correctional officer showed up for duty.

162.    Defendants Barnes County, Barnes County Jail, Sheriff McClaflin, Forsman, Jochim, Chase, Potts, and Burchill denied Warren Lindvold of the protections and promises made to inmates required by N.D.C.C. § 12-44.1-13 which provides:  "SUPERVISION OF INMATES:  1) Inmates shall be supervised on a twenty-four hour basis by trained correctional facility staff.  2) Correctional facility staff shall be located in proximity to inmate living areas to permit the staff to hear and respond promptly to calls for help."

162.1.   Defendant Forsman was responsible to train, supervise, and discipline the Barnes County Jail staff, including the employees and correctional officers who refused to provide medical care and supervision to Warren Lindvold.

163.    Upon arriving at the Barnes County Jail Warren Lindvold was unable to get out of the vehicle and was again physically "removed" from the back seat by Defendants Olson and Hannig.

164.    Warren Lindvold informed Defendants Olson and Hannig that he was in pain.

165.     The video and audio recording from the booking room at the Barnes County Jail show that Warren Lindvold was in obvious distress and pain and was unable to support himself even in a sitting position on the straight bench without arm rests.

25

166.    Defendant Jochim's only response to Warren Lindvold's physical condition and reports of his pain was to point at him and say: "Hey you are going to fall off the bench, sit up straight."

167.    In a recorded interview Defendant Jochim admitted to agents of the Bureau of Criminal Apprehension ("BCI"), that she was not trained by Defendants Barnes County and Sheriff McClaflin as required by the Department of Corrections.

168.    Warren Lindvold repeatedly told Defendant Jochim that he was in severe pain.

169.    Warren Lindvold asked Defendant Jochim to "Look at my arms. They are red."

170.    The injures and bruises on both of Warren Lindvold's arms were apparent and obvious.

171.    Warren Lindvold had obvious injuries as evidenced by the bloody wounds and numerous black welts that appeared above and below his elbows on both his right and left arms.

172.    When Defendant Jochim finally released Warren Lindvold from the handcuffs, he immediately winced in pain and grabbed his shoulders with both hands.  His facial expression made it apparent that he was in significant pain.

173.    While sitting on the bench at the Barnes County Jail Warren Lindvold told Defendants Hannig, Olson, Jochim, and Chase that he couldn't move his legs.

174.    At 1:16:31 a.m., Warren Lindvold made his first request for medical assistance telling Defendants Jochim, Olson, Hannig, and Chase that he wanted to see a doctor.

175.    Defendant Jochim responded to Warren Lindvold's request for medical assistance by incorrectly telling Warren Lindvold that he had already been taken to a doctor and had refused care.  Defendant Jochim's statement was incorrect.

176.    Defendant Olson then corrected Defendant Jochim telling her that Warren Lindvold had not been to the doctor.

177.    Defendant Jochim then responded to Warren Lindvold's pleas for help by telling him he had too much to drink.

178.    Defendant Jochim displayed flagrant and deliberate disregard for Warren Lindvold's obvious pain and suffering while he was in her care and custody and totally at her mercy, and instead she intently focused on cleaning Warren Lindvold's blood off of Defendant Olson's handcuffs.

179.    Warren Lindvold told Defendants Olson, Chase, and Jochim that he was experiencing the most severe pain that he had ever had.

180.    At 1:17:55 a.m., Warren Lindvold told Defendants Olson, Hannig, Jochim, and Chase that he could not bend forward and begged for help.

181.    Defendants Olson, Hannig, Jochim, and Chase ignored Warren Lindvold's pleas for help.

182.    Defendant Jochim callously interrupted Warren Lindvold's pleas for help and told him "You sleep it off."

183.    At approximately 1:22 a.m., on July 15, 2018, Defendant Jochim finally finished cleaning Warren Lindvold's blood off Defendant Olson's handcuffs and directed Defendant Chase to do the "medical questions."

184.    Defendant Chase asked Warren Lindvold a series of questions including whether Warren Lindvold had arthritis.

185.    Warren Lindvold told Defendant Chase that he has arthritis and ankylosing spondylitis.

186.    Warren Lindvold told Defendant Jochim that his mouth was dry and asked her for a squirt of water.

187.    Defendant Jochim told Warren Lindvold that she "might" be able to give him a drink of water, but then ignored his request and never provided Warren Lindvold with any water.

188.    When Defendant Olson needed to get Warren Lindvold's signature, he asked Defendants Jochim and Chase: "Do you have a pen you wouldn't mind throwing away?"

189.    At 1:28:20 a.m., Warren Lindvold made another request for medical assistance.

190.    At 1:28:20 a.m., Warren Lindvold told Defendants Jochim, Olson, and Hannig that it was an emergency and he needed to see a doctor.

191.    Defendant Jochim told Warren Lindvold to stop complaining.

192.    Defendant Jochim acknowledged that she was aware that Warren Lindvold had to be carried into the Barnes County Jail by Defendants Olson and Hannig and that he was repeatedly rubbing his neck and shoulders saying "it hurts, it hurts," when she ignored Warren Lindvold's desperate pleas that he needed emergency medical attention.

193.    Warren Lindvold was deprived of medical treatment and had his medical treatment delayed by the actions of Defendants Hannig and Olson.

194.    Defendants Hannig and Olson intentionally, falsely, and with gross recklessness represented and communicated to Barnes County Jail Correctional Officers that Warren Lindvold had not been injured, that he was able to stand and walk, and that he had resisted and obstructed during his arrest.

195.    Defendants Hannig and Olson purposely mislead and misinformed Defendants Jochim and Chase by withholding the results of Warren Lindvold's breath test and by

representing that Warren Lindvold's apparent injuries, pain, and physical distress were a sham and not to be believed or acted upon.

196.    The conduct of Defendants Hannig and Olson was intentional, wrongful, deceitful, grossly negligent, and resulted in Warren Lindvold suffering fatal and non-fatal injuries, and delayed and deprived him of medical care and assistance when the timing of such care was of critical importance.

197.    A dispute developed between Defendants Jochim, Olson, and Hannig concerning whether Warren Lindvold should be allowed to be seen by a doctor.

198.    Defendant Olson asked Warren Lindvold if he wanted to see a doctor.

199.    Warren Lindvold told Defendant Olson he did want to see a doctor.

200.    Defendant Olson asked Warren Lindvold if he wanted an ambulance.

201.    Warren Lindvold told Defendant Olson that something really bad was wrong with his neck and that he wanted an ambulance to take him to a doctor.

202.    Defendant Hannig tried to prevent Warren Lindvold from receiving any medical attention.

203.    Defendant Hannig argued with Warren Lindvold telling him he did not need an ambulance or medical care.

204.     Defendant Jochim then told Defendants Olson and Hannig that she did want Warren Lindvold to get a medical evaluation.

205.    Defendant Hannig told Defendant Olson that Warren Lindvold did not need an ambulance or medical care.

206.    Defendant Jochim then admitted that Barnes County Jail policy required prisoners that had consumed alcohol be medically cleared.

29

207.    Defendant Hannig continued to argue with Defendant Jochim and they left the area monitored by the audio and video recording device to continue their argument where it could not be recorded.

208.    Defendant Jochim contacted then off-duty Defendant Burchill to inform Burchill that Defendants Hannig and Olson were bullying her in an attempt to deny Warren Lindvold from receiving medical attention.

209.    Defendant Jochim sent text messages to Defendant Burchill stating that Defendants Hannig and Olson threatened to make an issue on Monday if Warren Lindvold was given medical assistance.

210.    Warren Lindvold informed Defendant Jochim that the paramedics should be told that Warren Lindvold had severe pain in his shoulder, muscle pain in his legs, and loss of feeling in his legs.

211.    At 1:30 a.m., Warren Lindvold was unable to sit up and he told Defendant Chase that he could not move and believed he was dying.

212.    An ambulance operated by employees of Defendant Barnes Ambulance was dispatched to the Barnes County Jail to transport Warren Lindvold to Defendant Mercy Hospital.

213.    When the ambulance arrived at the Barnes County Jail Warren Lindvold told the ambulance crew that he could hardly move.  Warren Lindvold reported that he had severe pain in his neck and shoulders.

214.    Warren Lindvold informed EMT Rippley that he had chronic neck pain caused by arthritis and ankylosing spondylitis.

215.    Warren Lindvold informed EMTs Rippley and Anderson, as well as and the Barnes County Correctional Officers present, that the severe neck pain was not normal and that he had never had symptoms of this type or this severe of neck pain before.

216.    Warren Lindvold informed EMTs Rippley and Anderson that the severe neck and shoulder pain started after he was arrested and that he couldn't move.

217.    Warren Lindvold told EMTs Rippley, Miller, and Anderson that he couldn't walk and could hardly drag his foot.

218.    Warren Lindvold told EMTs Rippley, Miller, and Anderson that his inability to walk and foot drag was not normal.

219.    Defendant Hannig made statements to EMT Rippley and EMT Miller claiming that Warren Lindvold was faking his pain and injuries and attempted to convince them that Warren Lindvold's descriptions of his medical emergency and symptoms need not be taken seriously.

220.    The EMTs used a stair chair to transport Warren Lindvold to the ambulance because he could not walk.

221.    After Warren Lindvold was transported by the EMTs from the Barnes County Jail, Defendant Jochim made telephone calls where she explained that Warren Lindvold's medical clearance was only for intoxication.

222.    During her telephone conversation, Defendant Jochim referred to Warren Lindvold as a drunk guy being a "dick" and being so drunk that he had to be carried up the stairs.

223.    At 3:21 a.m., Defendant Jochim recorded in the electronic jail log that Warren Lindvold was sent to be medically cleared due to intoxication.

224.   Defendant Barnes Ambulance transported Warren Lindvold to Defendant Mercy Hospital.

225.   Mark Klabo, a Physician Assistant working in the Mercy Hospital Emergency Room provided medical care and treatment to Warren Lindvold.

226.   Klabo noted that Warren Lindvold was "brought in to ER for a legal blood draw. . . Shortly before law enforcement was leaving the ER, pt. began complaining of muscle soreness to his neck . . ."

227.   A nursing note, related to Warren Lindvold's examination and treatment at Defendant Mercy Hospital, repeated the story that was given to Defendant Barnes Ambulance by Defendants Olson, Hannig, Jochim, and Chase.   The nursing note read that after Warren Lindvold was told he was being arrested Warren Lindvold complained that he could not walk.

228.   Defendants Olson, Hannig, Jochim, and Chase interfered with and deprived Warren Lindvold of medical care when they failed to communicate Warren Lindvold's numerous complaints, medical history, and present condition to EMTs Rippley, Miller, and Anderson.

229.   Defendants Olson, Hannig, Jochim, and Chase obstructed and mislead the ambulance personnel to purposely and intentionally mislead Warren Lindvold's medical providers by suggesting that Warren Lindvold was not injured and was merely trying to avoid going to jail.

230.   Defendants Olson and Hannig minimized Warren Lindvold's medical emergency by failing to provide an accurate history to Warren Lindvold's medical providers concerning their use of pain compliance holds, painful twisting and hoisting of Warren Lindvold's arms when his hands were handcuffed behind his back, and physically dragging Warren Lindvold by his arms when his arms were handcuffed behind his back.

32

231.     Defendants Olson, Hannig, Jochim, and Chase intentionally obstructed and mislead the ambulance personnel knowing that the inaccurate information and history would be communicated to the staff of Defendant Mercy Hospital.

232.     Defendants Olson, Hannig, Jochim, and Chase minimized Warren Lindvold's medical emergency and prevented Warren Lindvold's medical providers from assessing and treating Warren Lindvold's severe pain, inability to walk or stand, inability to move his legs or bend over, and numbness in his limbs.

233.     The actions of Defendants Olson, Hannig, Jochim, and Chase interfered with, obstructed, and deprived Warren Lindvold from obtaining necessary medical treatment.

234.     Defendants Hannig and Olson falsely represented that Warren Lindvold had been medically cleared and was suitable for continued incarceration.

235.     At no time during his detention by law enforcement was Warren Lindvold allowed to make a telephone call to arrange bail, contact an attorney, or to inform family of his whereabouts or his medical problems.

236.     Warren Lindvold was held without bail at the order of Defendant Hannig.

237.     At no time during Warren Lindvold's detention by law enforcement did Defendants Olson, Hannig, Jochim, and Chase, or any other Barnes County Jail employees explain to Warren Lindvold the conditions of his detention, that he was being held without bail, or that he was entitled to make a phone call.

238.     The Barnes County Jail staff later released him on his own recognizance some hours later after the ambulance was called for the second time.

239.     After being returned to the Barnes County Jail Warren Lindvold was forced to change out of his clothes and dress in prison clothes.

33

240.    Warren Lindvold required assistance to change clothes.

241.    Defendants Olson and Hannig chastised, demeaned, and rebuked Warren Lindvold for being unable to change his own clothes without assistance by yelling at him and calling Warren Lindvold childish and ridiculous.

242.    Defendant Hannig berated Warren Lindvold telling Warren Lindvold to stand up and walk like a man.

243.    Defendant Jochim heard Warren Lindvold pleading with Defendants Olson and Hannig telling them that his legs won't work and he could not walk.

244.    Warren Lindvold begged Defendants Olson and Hannig "please don't hurt me" before he screamed in agony as Defendants Hannig and Chase wrenched him up by his arms and drug him down the hallway to a cell.

245.    Warren Lindvold was dragged backward with his limp legs dragging behind him and then left alone in a dark cell with the door locked.

246.    Warren Lindvold was dragged to a dark cell and left on a bunk with the door locked.

247.    There were no lights in Warren Lindvold's cell because the lighting had been vandalized by a previous inmate and Defendant Barnes County Jail considered it a fire hazard and a safety hazard to turn on the lights. Defendant Jochim did not turn on any lights in Warren Lindvold's cell because she believed Warren Lindvold could have been electrocuted by the broken lights.

248.    Warren Lindvold's cuts, lacerations, bruises, black welts, and tearing on both of his arms were openly bleeding and continued to bleed, but were left untreated and unaddressed the entire time he was in the custody of Defendants Olson, Hannig, Jochim, Chase, Potts, and

Burchill.   Warren Lindvold's wounds were ignored by Defendants and they refused and neglected to offer or provide any medical treatment to Warren Lindvold.

249.   Defendant Jochim described the extent of Warren Lindvold's bleeding as gross and disgusting with blood everywhere on the wall and on the bench.

250.   Defendants Jochim and Chase cleaned Warren Lindvold's blood off the wall and bench after Warren Lindvold was first transported to Mercy Hospital.

251.   Warren Lindvold's wounds continued to bleed after he was left alone in the jail cell.  Barnes County jail prisoners were hired to clean Warren Lindvold's blood from his cell after he was transported to the hospital a second time.

252.   Left alone in his dark cell Warren Lindvold called for help.

253.   Warren Lindvold pleaded for help from 03:18 to 03:21 a.m., crying out: "Help me . . . Help me . . . . please?"

254.   No one responded to Warren Lindvold's cries for help.

255.   Between 3:18 and 3:21 a.m. Defendants Jochim and Chase were the only two correctional employees on duty.

256.   At 3:25:05 a.m. Warren Lindvold again cried for help.

257.   Defendant Jochim walked back to Warren Lindvold's cell and shined a flashlight in Warren Lindvold's cell from the other side of the hallway.

258.   Defendant Jochim did not turn on any lights while observing Warren Lindvold.

259.   Defendant Jochim observed Warren Lindvold for less than two minutes, but failed to record her observations in the jail log.

260.   Defendant Jochim observed Warren Lindvold in the corner of his cell unable to move and asking for help to get out the position he was in.  Defendant Jochim refused to enter the cell, turn on the light, or provide any assistance to Warren Lindvold.

261.   Defendant Jochim returned to the booking room and told Defendant Chase that Warren Lindvold was on the floor yelling out for help because he could not get up.

262.   Defendant Jochim told Warren Lindvold not to yell at her and refused to enter the cell and help Warren Lindvold. Defendant Jochim refused to enter Warren Lindvold's cell because the jail was understaffed and no one was available to help or protect her if she entered the cell.

263.   At 3:30:45 a.m., Warren Lindvold again cried for help from his dark jail cell.

264.   Defendants Jochim and Chase did not respond to Warren Lindvold's pleas and neither logged any entries regarding Warren Lindvold's pleas for help.

265.   At 5:46 a.m., Defendant Jochim went to Warren Lindvold's cell, shined a flashlight in and observed Warren Lindvold for 62 seconds.

266.   At 5:46 a.m., Warren Lindvold was lying on the floor on his back.  Warren Lindvold told Defendant Jochim that he thought he had a stroke, he described tingling in his arms and legs, and told Defendant Jochim that he was physically unable to get up from the floor of his cell.

267.   Warren Lindvold asked Defendant Jochim to get him help.

268.   Defendant Jochim later admitted to Defendant Potts she did not know what to do and did not know how to respond to Warren Lindvold's request for help.

269.   Defendant Jochim reported Warren Lindvold's request for help to her supervisor.

270.     Defendant Jochim failed to log this incident in the jail log.

271.     Neither Defendant Jochim nor her supervisor provided any help or aid to Warren Lindvold who was in need of medical attention for a serious medical condition.

272.     Defendant Potts left Warren Lindvold alone in his dark cell without help for three hours after Defendant Jochim had reported Warren Lindvold's pleas for help and physical condition.

273.     At 05:11 a.m., Defendant Potts arrived at the Barnes County Jail.  Upon arriving at the jail Defendant Potts was informed by Defendant Jochim that Warren Lindvold was on his back on the floor of his cell, unable to get up, complaining of having had a stroke, and asking for help.

274.     Despite such knowledge Defendant Potts did not enter Warren Lindvold's jail tier on his first inspection round at 06:12 a.m. and took no action to secure adequate medical care for Lindvold serious medical condition.

275.     Defendant Potts stopped near Warren Lindvold's cell for 30 seconds.  Warren Lindvold communicated to Defendant Potts that he "can't get up . . . his hands, can't move his hands, can't get up off the floor."  Defendant Potts took no action to help Warren Lindvold and left him on his back on the floor of the jail cell.

276.     Defendant Potts noted in the log only that "Lindvold on the ground, rather than on his bunk."

277.     Defendant Potts did not check on Warren Lindvold again until 06:47:13 a.m. Although Defendant Potts did actually enter the jail tier and converse with Warren Lindvold, he did not turn on a light or enter the jail cell to assist Warren Lindvold.  Defendant Potts again left Warren Lindvold lying on his back and recorded in the jail log at 7:10:09 a.m.: "rounds done,

lindvold keeps complaining about not being able to move his hands, he claims he had a stroke sometime in the night."

278.    Defendant Potts did not take any further action, did not notify anyone, and left Warren Lindvold on the concrete floor and did not check on him again for nearly an hour.

279.    Defendant Chase left the Barnes County Jail at 05:48 a.m.

280.    Defendant Jochim left the Barnes County Jail at 05:55 a.m.

281.    Defendant Burchill arrived at the Barnes County Jail at 07:45 a.m.

282.    The Barnes County Jail had only one Correctional Officer present and on duty to supervise and protect inmates from 05:55 a.m. until 07:45 a.m.

283.    Defendants Barnes County Jail, Sheriff McClaflin, Julie Forsman, and Barnes County made a decision to operate the Barnes County Jail with insufficient staff to adequately supervise and provide for the safety of inmates including Warren Lindvold.

284.    Defendants' decision to operate the Barnes County Jail with insufficient staff to adequately supervise and provide for the safety of inmates including Warren Lindvold violated the minimum standards, rules, and laws established by the State of North Dakota.

285.    Defendants' decision/policy to operate the Barnes County Jail with insufficient staff to adequately supervise and provide for the safety of inmates, including Warren Lindvold, was long term, occurring well before and well after Warren Lindvold's incarceration and death, violated the minimum standards, rules, and laws imposed on Defendants by the Department of Corrections closure order, was an official policy and a deliberate choice of Defendant Sheriff McClaflin.

286.    Defendants McClaflin and Forsman were the Barnes County Officials who had final authority and responsibility for staffing decisions at the Barnes County Jail.  Said practice

of operating the Barnes County Jail while understaffed was a continuing, widespread, and persistent pattern of unconstitutional misconduct by Defendants Barnes County, Forsman, and Sheriff McClafflin.

287.    Defendants Barnes County, Sheriff McClafflin, and Forsman had been previously put on notice when their facility had failed previous state inspections and warned that their operation of the Barnes County Jail understaffed and in violation of State standards was a life safety issue needing immediate correction.

288.    Defendants' refusal to correct or change said policies and customs were deliberately indifferent to the constitutional rights of the people who had been entrusted to their custody, and did result in the deprivation of Warren Lindvold's constitutional rights, causing him agony, suffering, and death.

289.    When he arrived at the Barnes County Jail Defendant Potts was informed that Warren Lindvold was lying on his back on the floor of his cell, unable to get up, stating that he was afraid he had suffered a stroke, describing stroke like symptoms, and asking for help.

290.    Defendant Potts did not enter Warren Lindvold's jail tier on his first inspection round at 06:12 a.m.

291.    Defendant Potts made no observation of Warren Lindvold's condition on his first inspection round at 06:12 a.m.

292.    At 6:47 a.m., Defendant Potts stopped near Warren Lindvold's cell for 30 seconds.

293.    Warren Lindvold told Defendant Potts that he could not get up off the floor and that he could not move his hands.

294.   Defendant Potts took no action to help Warren Lindvold and left him on his back on the floor of the jail cell.

295.   At 7:45 a.m., Defendant Burchill arrived at the Barnes County jail.

296.   Defendant Potts told Defendant Burchill that Warren Lindvold could not move his hands and could not get up off the floor.

297.   Defendants Potts and Burchill went to Warren Lindvold's cell where Defendant Potts entered the cell and was unable to lift Warren Lindvold onto his bunk.

298.   Defendant Burchill then entered the cell and the two of them wrestled with Warren Lindvold, but were unable to get him onto his bunk.

299.   Warren Lindvold told Defendant Burchill that he could not feel his feet or fingers.

300.   Defendants Burchill and Potts left the cell leaving Warren Lindvold alone on the cell floor.

301.   Defendant Burchill then called the Valley City Police Department and told someone that Warren Lindvold was lying on the floor of the jail cell and could not move.

302.   Defendant Burchill then called dispatch and requested a non-emergency ambulance, no lights or sirens, be sent to the Barnes County Jail.

303.   Defendant Burchill indicated he was going to make sure that Warren Lindvold did not get out of jail or get out of his charges.

304.   Barnes Ambulance personnel arrived at 8:00 a.m.

305.   Warren Lindvold was placed on a spine board and transported back to Defendant Mercy Hospital.

306.   Warren Lindvold left the Barnes County Jail in an ambulance at 8:17 a.m.

307. At Mercy Hospital Warren Lindvold was diagnosed with was paralysis caused by a fracture of his cervical spine and epidural and subdural hemorrhage.

308. Warren Lindvold was transferred from Defendant Mercy Hospital to Sanford Health in Fargo, North Dakota where he underwent emergency neurosurgery.

309. Warren Lindvold died six days later.

310. Defendants Hannig and Olson used unnecessary, unwarranted, and excessive force against Warren Lindvold by handcuffing him, by handcuffing his arms behind his back, by refusing to remove or shift the handcuffs, by applying pain submission holds, by hoisting Warren Lindvold by his arms handcuffed behind his back, by dragging Warren Lindvold to the patrol vehicle by his arms handcuffed behind his back, by forcibly loading him into the patrol vehicle, by forcibly removing him from the patrol vehicle at the police station, by dragging him by his arms handcuffed behind his back into the Barnes County Jail and by dragging him by his arms handcuffed behind his back into the jail cell.

311. Warren Lindvold was unable to walk or stand and repeatedly communicated this condition to Defendants Hannig and Olson. During this time Warren Lindvold was screaming in pain, had to be forcibly loaded into the patrol vehicle, cried and stated the pain was so intense he thought that he would be dead by morning, that he wished he could die, that he could not feel his legs, and that his limbs were numb. He was bleeding from both arms so copiously that contemporaneous video recorded Defendants Hannig and Olson obtaining materials and using them to clean Warren Lindvold's blood off themselves, but doing nothing for Warren Lindvold.

312. Warren Lindvold's injures and condition were so "objectively serious" and so severe as to cause paralysis, extreme pain, and death, and were so obvious that even a layperson would easily recognize the necessity for a doctor's attention.

41

313.    The actions of Defendants Olson and Hannig were intentional, knowing, malicious, grossly reckless, deliberately indifferent, and amounted to excessive force in violation of the Fourth and Eighth Amendments to the United States Constitution.

314.    The use of unnecessary, unwarranted, and excessive force by Defendants Hannig and Olson against Warren Lindvold proximately caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to a fractured spine, pain, emotional distress, anguish, and death and deprived Warren Lindvold of his civil rights.

315.    Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill interfered with, obstructed, and deprived Warren Lindvold from obtaining necessary medical evaluations and treatment.

316.    The actions of Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill were intentional, knowing, malicious, grossly reckless, deliberately indifferent, and amounted to excessive force and cruel and unusual punishment in violation of the Fourth and Eighth Amendments to the United States Constitution.

317.    Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill interfered with, obstructed, and deprived Warren Lindvold of necessary medical evaluation and treatment which proximately caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to a fractured spine, pain, emotional distress, anguish, and death and deprived Warren Lindvold of his civil rights.

318.    The inspection rounds conducted by Defendants Jochim, Chase, Potts, and Burchill of Warren Lindvold at the Barnes County Jail on or about July 15, 2018, after Warren Lindvold had been dragged to his cell and left for five hours before being found paralyzed on the floor of his jail cell failed to comply with the minimum standards established by the rules and

laws of the State of North Dakota and the Department of Corrections orders and requirements directed specifically to Defendants Barnes County, Julie Forsman, and Sheriff McClaflin concerning the operation of the Barnes County Jail.

319.   Defendants Barnes County, Julie Forsman, and Sheriff McClaflin had a history of non-compliance with the minimum standards established by North Dakota rules and law and the Department of Corrections orders and requirements directed specifically to Defendants Barnes County, Julie Forsman, and Sheriff McClaflin concerning their operation of the Barnes County Jail.

320.   Defendants Barnes County, Julie Forsman, and Sheriff McClaflin's history of making deliberate decisions to operate the Barnes County Jail without the required and sufficient staff and procedures, policies, and training to comply with the minimum standards established by North Dakota rules and law and the Department of Corrections orders and requirements directed specifically to Defendants Barnes County, Julie Forsman, and Sheriff McClaflin concerning their operation of the Barnes County Jail establishes that such conduct and course of action as Defendants officially adopted policy.

321.    Defendants' history of making deliberate decisions to operate the Barnes County Jail without the required and sufficient staff establishes such conduct and course of action as evidence of a deliberate indifference to the safety, security, constitutional rights, and serious medical needs of inmates, including Warren Lindvold.

322.   The failure of Defendants Barnes County, Julie Forsman, and Sheriff McClaflin to ensure compliance with the minimum standards established by North Dakota rules and law and the Department of Corrections orders and requirements directed specifically to Defendants Barnes County, Julie Forsman, and Sheriff McClaflin concerning their operation of the Barnes

County Jail was intentional, knowing, malicious, grossly reckless, deliberately indifferent, and amounted to excessive force and cruel and unusual punishment in violation of the Fourth and Eighth Amendments to the United States Constitution

323.    The failure of Defendants Barnes County, Julie Forsman, and Sheriff McClaflin to ensure compliance with the minimum standards established by North Dakota rules and law and the Department of Corrections orders and requirements directed specifically to Defendants Barnes County, Forsman, and Sheriff McClaflin concerning their operation of the Barnes County Jail was intentional, grossly reckless, deliberately indifferent, and proximately caused Warren Lindvold to sustain severe and fatal injuries, including but not limited to a fractured spine, pain, suffering, emotional distress, anguish, and death and deprived Warren Lindvold of his civil rights..

324.    It was foreseeable that Defendants' official policy and practice of operating the Barnes County Jail without the required and sufficient staff and training would and did result in the deprivation of Warren Lindvold's constitutional rights causing Warren Lindvold to sustain severe and fatal injuries, including but not limited to a fractured spine, pain, suffering, emotional distress, anguish, and death and deprived Warren Lindvold of his civil rights.

325.    At all times relevant hereto a "special relationship" within the meaning of N.D.C.C. § 32-12.1-03(g)(3) existed between Warren Lindvold and Barnes County and its employee Defendants:  Sheriff McClaflin, Facility Supervisor Julie Forsman, Correctional Officers Jochim, Chase, Potts, Burchill; and Valley City and its employee Defendants Olson and Hannig.  Warren Lindvold was unlawfully arrested, assaulted, incarcerated, and was under the direct total control of said employees.  By reason of said direct control he was wholly dependent upon said Defendants for his hydration, nutrition, health, safety, medical care, and

44

communications with anyone other than the Defendants.  He was held *incommunicado* by said Defendants, denied an opportunity to arrange for his release, contact a lawyer, and arrange or obtain medical care for his life threatening and ultimately fatal injuries.   By such conduct Defendants assumed and were in fact responsible to act on behalf of Warren Lindvold to safeguard his health and safety.  Defendants knew and should have known that their actions, omissions, refusal, and failure to perform said duties would and did result in Warren Lindvold's injuries, prolonged suffering, and death.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE FOURTH AMENDMENT – UNREASONABLE SEIZURE – WARRANTLESS ARREST WITHOUT PROBABLE CAUSE

## AGAINST DEFENDANT CHRISTOPHER OLSON

## AND DEFENDANT WADE HANNIG

### (42 U.S.C. 1983 – Violation of the 4th Amendment)

326.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

327.    Warren Lindvold had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unlawful, warrantless arrests.

328.    At all times hereinafter mentioned Defendants Olson and Hannig were Police Officers employed by Valley City, acting under color of law of a statute, ordinance, regulation, custom, or usage of the laws of North Dakota with respect to the seizure, detention, and arrest of Warren Lindvold.

329.    As more fully explained in the preceding paragraphs herein, as a result of the alleged incidents described above, the Plaintiff's Decedent, Warren S. Lindvold, was, on July 15, 2018, by the aforementioned conduct of Defendants Olson and Hannig, subjected to a warrantless and unreasonable arrest, detention, and imprisonment in the absence of probable

cause and there existed no exceptions that justified the warrantless arrest.  Defendants Olson and Hannig, acting individually and/or jointly and severally, violated Warren Lindvold's Fourth Amendment rights under the United States Constitution, enforceable through 42 U.S.C. § 1983.

330.   The actions of Defendants Olson and Hannig were objectively unreasonable in light of the circumstances confronting them, and included:

- Arresting Warren Lindvold despite knowledge that he provided a valid pre-arrest screening test result of 0.03% by weight, and knowledge that Warren Lindvold was presumed by North Dakota law not to be under the influence of alcohol;

- That Warren Lindvold was not exhibiting physical signs of alcohol impairment such as slurred speech, balance problems, erratic behavior or speech, neither his speech or his actions provided officers with probable cause to believe he was impaired by alcohol;

- That Defendant Olson had personal knowledge of Warren Lindvold and knew Warren Lindvold had a spinal condition that impaired his movements, independent of any alcohol or drug consumption;

- That Warren Lindvold had provided explanations as to his physical limitations and pain to Defendants Olson and Hannig, prior to his arrest, that confirmed Defendant Olson's prior knowledge, and that informed Defendants Olson and Hannig that any inability to walk or move about normally was due to pre-existing physical disability and not from consumption of alcohol;

- That Defendants Olson and Hannig disregarded, concealed, minimized, and failed to report said facts to others and in reports, and used bad faith to try to justify their unlawful, warrantless arrest.  Said facts evidence that Defendants Olson and Hannig

46

did in fact did not believe or have a reasonable belief that Lindvold committed the offense of Driving Under the Influence of Alcohol or any other criminal offense.  It was objectively unreasonable for Olson and Hannig to arrest Lindvold.

- Defendants Olson and Hannig concealed the facts that established Warren Lindvold was not under the influence and not lawfully arrested to Barnes Correctional Officers, Barnes County Ambulance personnel, and medical providers at Mercy Hospital, and by doing so furthered the period by which Warren Lindvold was unlawfully detained, causing him pain, injury, and death.

331.    The actions of Defendants Olson and Hannig were intentional, willful, reckless, wanton, unreasonable, and deliberately indifferent.

332.    Following the unlawful arrest, Defendants Olson and Hannig, individually and/or jointly and severally, directed and caused Warren Lindvold to be unlawfully detained and incarcerated and subjected Warren Lindvold to a continued detention for a period of time during which he was held without bail.

333.    As a direct and proximate result of the unlawful actions of Defendants Olson and Hannig  affecting the arrest, detention, and imprisonment, Warren Lindvold sustained severe and fatal bodily injuries, anguish, and physical and emotional pain and suffering; was deprived of his constitutional rights to be free from unreasonable seizures; and was prevented from and denied an opportunity to seek medical care for his chronic health condition and/or delayed him the opportunity to obtain medical care, all of which lead to great pain, suffering, and physical anguish prior to his death and inevitably resulted in his death on the 21st day of July, 2018.

334.    The conduct alleged herein was done in deliberate or reckless disregard of Warren Lindvold's constitutionally protected rights; justifying the award of general and punitive damages against the individually named Defendants.

335.    WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

### SECOND CAUSE OF ACTION

### VIOLATIONS OF THE FOURTH AMENDMENT – UNREASONABLE SEIZURE - EXCESSIVE FORCE

### AGAINST DEFENDANTS CHRISTOPHER OLSON,  WADE HANNIG, JENNA JOCHIM, RICHARD CHASE, BRUCE POTTS, AND JESSE BURCHILL

(42 U.S.C. 1983 – Violations of the Fourth Amendment)

336.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

337.    At all times hereinafter mentioned, Defendants Olson and Hannig were Police Officers employed by Defendant Valley City and Defendants Jochim, Chase, Potts, and Burchill were Correctional Officers employed by Defendants Barnes County, Julie Forsman, and Sheriff McLaughlin, and were acting under color of law of a statute, ordinance, regulation, custom, or usage of the laws of North Dakota, when they used objectively unreasonable force with respect to the seizure, detention, arrest, and physical force used to restrain, punish, move, and transport Warren Lindvold.  Said excessive force was applied repeatedly to Warren Lindvold during and at the time of his arrest, transport, and detention at the Barnes County Jail.  Warren Lindvold had a clearly established right to be free from unreasonable and excessive force, excessively forceful or unduly tight handcuffing, gratuitous violence, and unnecessary infliction of pain.

338.    As more fully explained in the preceding paragraphs herein, as a result of the alleged incident hereinbefore described, the Plaintiff's Decedent, Warren S. Lindvold, was, on

July 15, 2018, subjected to a warrantless and unreasonable seizure, arrest, detention, and imprisonment in the absence of probable cause in violation of his Fourth Amendment rights under the United States Constitution by Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill individually and/or jointly and severally, and enforceable through 42 U.S.C. § 1983.

339.     Said instances of excessive force, more fully explained in the preceding and following paragraphs and allegations, occurred at the time and place of his arrest, during his transport to and while at the Valley City Police Station, during his transport to and while at the Barnes County Jail, and prior to and following his initial transport to Mercy Hospital.

340.     A contemporaneous video illustrates Warren Lindvold, in obvious pain, bend forward and say "Uff . . . that arm of mine hurts so God Damn much."  Defendant Olson ignored Warren Lindvold's complaints and expressions of pain and the fact that Warren Lindvold displayed difficulty standing due to the pain he was in.  Warren Lindvold slumped and stated: "Jesus Christ they hurt."

341.     After Warren Lindvold attempted to walk with his hands still cuffed behind his back, Warren Lindvold repeatedly asked the Defendant Officers to remove the handcuffs. Warren Lindvold assured Defendant Olson that he was not going to hurt him and indicated that "I'm not being mean, I just hurt."  After Warren Lindvold attempted to walk back to the rear of the patrol vehicle he slumped in pain and asked the Defendant Officers to take the cuffs off because he couldn't walk.  Warren Lindvold stated: "Well you take them off now because I can't walk that far."  Defendant Olson refused to remove the handcuffs.

342.     Warren Lindvold did not resist Defendant Olson.  Warren Lindvold was not violent or uncooperative.  He was a friendly 72 year old man who neither threatened nor posed any risk to Defendants Hannig or Olson.  Warren Lindvold's inability to promptly comply with

Defendant Olson's commands to walk was because he was physically unable to do so, a fact that should have been obvious to any reasonable police officer, and was obvious to Defendants Olson and Hannig who knew Warren Lindvold's alcohol concentration was less than ½ the legal limit. Warren Lindvold demonstrated a physical inability to walk or stand when his arms were handcuffed behind his back.  Warren Lindvold's repeated pre-arrest and post-arrest description of his pain, physical condition, and numerous pleas to have his handcuffs removed put Defendants Olson and Hannig on notice that Warren Lindvold was not a proper candidate for handcuffs.  Unable to walk or even stand, Warren Lindvold begged to have his arms released,  on ten different occasions and explained to Defendant Olson that he could not stand or "can't walk that far" with his arms handcuffed behind his back.

343.   Said instances of excessive force employed on Warren Lindvold include, but are not limited to:  having his arms handcuffed behind his back; refusal to remove or shift his handcuffs despite his incredible pain and suffering; disability and injury said handcuffs were causing when said injuries were blatantly obvious to any objective person; continuing to keep him shackled despite his continuous and repeated pleas, explanations, and exclamations of pain; the pain compliance holds employed by Defendants Olson and Hannig with the wrist lock and the hoisting of Warren Lindvold's arms vertical behind his back; hoisting and dragging him despite his repeated pleas, cries, screams, and descriptions of his chronic arthritis and ankylosing spondylitis and his back, shoulder, and neck pain; forcibly loading Warren Lindvold both into and out of the patrol vehicle; dragging him by his handcuffed arms at the police station; injuring his arms so severely that they were visibly covered with black welts from his wrist to the sleeves of his shirt and bleeding continuously from when he was arrested until he was found paralyzed on his cell floor seven hours later; forcing Warren Lindvold to ascend steps at the Barnes County

Jail; physically forcing him to remove his clothing at the Barnes County Jail despite his obvious inability to do so without great pain; forcing Warren Lindvold to remain seated on a bench when he was in obvious agony; preventing him from supporting his fractured spine with his hands while being forced to remain seated on an armless bench and while having his clothes forcibly removed and changed; physically and forcibly preventing Warren Lindvold from supporting his fractured spine with his hands while he was being forced to attempt to stand and walk or while being dragged to a cell; and dragging Warren Lindvold to a cell while he screamed and begged Defendants Olson, Hannig, Chase, and Jochim not to hurt him. Additionally, Defendants Potts and Burchill employed excessive force when they forcibly lifted Warren Lindvold from his jail cell floor having knowledge that he had been on the floor for hours, was unable to move, and after Warren Lindvold had advised them that he could not move or feel his arms, legs, feet, or hands.

344. The instances of excessive force by Defendants Olson and Hannig were accompanied by complaints from Warren Lindvold that the handcuffs, holds, and force were causing him pain and injury. Defendants Olson and Hannig ignored Warren Lindvold's repeated complaints, requests, pleas, and screams causing Warren Lindvold to suffer fatal and non-fatal injuries as a direct and proximate result. Defendant Hannig had a duty, which he ignored, to stop Defendant Olson's unlawful actions that included employing gratuitous and punishing pain compliance holds against Warren Lindvold and Defendant Hannig is jointly liable for said action.

345. Warren Lindvold had a clearly defined constitutional right to be free from excessive and unlawful force and at all times herein described a reasonable officer would have

known that the actions of Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill were objectively unreasonable and violated Warren Lindvold's right to be free from excessive force.

346.    As a direct and proximate result of the aforementioned intentional, malicious, grossly reckless, objectively unreasonable, and deliberately indifferent conduct and actions of Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill, Warren Lindvold was deprived of his constitutional rights and sustained severe and fatal bodily injuries, anguish, great pain, suffering, and physical anguish prior to his impending death, and death on the 21st day of July, 2018.

347.    The conduct alleged herein was done in deliberate or reckless disregard of Warren Lindvold's constitutionally protected rights; justifying the award of general and punitive damages against the individually named Defendants.

348.    WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

### THIRD CAUSE OF ACTION

### VIOLATIONS OF THE FOURTH AND FOURTEENTH AMENDMENTS – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED (PRE-BARNES COUNTY JAIL)

### AGAINST DEFENDANTS CHRISTOPHER OLSON AND WADE HANNIG

### (42 U.S.C. 1983 – Violation of the 4th and 14th Amendments)

349.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

350.    Warren Lindvold was a pretrial detainee and had a clearly established right under the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to his known serious medical needs while he was in the custody of officers of the Valley City Police Department and Correctional Officers of the Barnes County Jail.

351.    Prior to Warren Lindvold's arrest Defendants Olson and Hannig observed and were informed that Warren Lindvold suffered from arthritis in his back and neck and that it was painful enough to "turn him around" and cause him extreme pain.  Warren Lindvold advised both Defendants Olson and Hannig that he suffered from ankylosing spondylitis.  Beginning at the time of the traffic stop and throughout the pre-arrest period Defendants Olson and Hannig had observed Warren Lindvold repeatedly reach to his shoulder and neck area, gesturing and demonstrating the he was in significant pain.  He repeatedly described his pain, the cause and source of his pain, and his arthritic condition and ankylosing spondylitis.  Warren Lindvold's chronic arthritis and ankylosing spondylitis and his back and neck condition were so apparent as to be obvious to any reasonable person or layperson, that Warren Linvold required prompt medical attention even without Warren Lindvold's repeated explanations and descriptions of his physical conditions to Defendants Olson and Hannig, that Warren Lindvold.  Defendant Olson had prior personal knowledge of Warren Lindvold's physical disability and limitations. Defendants Olson and Hannig had actual knowledge, both subjective and objective, of Warren Lindvold's serious medical need and deliberately ignored it.  In light of all the circumstances relating to Warren Lindvold's arrest, detention, transportation, and confinement, reasonable officers would have known that ignoring Warren Lindvold's obvious serious medical distress and emergency would have violated an arrestee's constitutional rights and their actions in failing to seek medical care for Warren Lindvold were deliberately indifferent.

352.    Warren Lindvold's medical needs and condition were so obvious that even a layperson would have easily recognized the necessity for a doctor's care.  Defendants Olson and Hannig had knowledge both by Warren Lindvold's lack of physical characteristics of alcohol impairment and that Warren Lindvold's alcohol concentration was less than ½ the legal limit was

presumed not under the influence, that Lindvold suffered from arthritis and ankylosing spondylitis, and that Warren Lindvold's condition was not caused by alcohol impairment. After Warren Lindvold was arrested and handcuffed, he repeatedly explained to Defendants Olson and Hannig that he was having difficulty, was in great pain, and was unable to stand or walk with his arms handcuffed behind his back. Warren Lindvold's exclamations, screams, shouts, actions, and statements made at the time he was arrested, handcuffed, subjected to pain compliance holds, had his handcuffed arms hoisted behind his back, and dragged to and forcibly loaded into the patrol vehicle by Defendants Olson and Hannig made it obvious to any objective person or layperson that Warren Lindvold was suffering a medical emergency and needed immediate medical attention for his obvious injuries. Defendants Olson and Hannig had knowledge and knew of Warren Lindvold's condition and medical need, but consciously and deliberately disregarded the same. Defendants Olson and Hannig refused to bring Warren Lindvold for medical attention and instead brought him to the Barnes County Jail. Defendants Olson and Hannig then knowingly and purposely obstructed and concealed Warren Lindvold's obvious medical need by refusing to communicate to jail personnel and ambulance and medical personnel that facts of Warren Lindvold's alcohol concentration, the details of the physical force and pain compliance they had applied to Warren Lindvold, Warren Lindvold's excruciating response to said force, and Warren Lindvold's physical inability and/or difficulty in walking or standing. Defendants Olson and Hannig further purposely and intentionally deprived Warren Lindvold of necessary medical assistance for a serious medical need by representing to Barnes County Jail personnel, Barnes County Ambulance personnel, and medical providers that Warren Lindvold's injuries and distress were a sham and not to be taken seriously. The actions and omissions, of Defendants Olson and Hannig were intentional, knowing, malicious, grossly reckless, and

deliberately indifferent to Warren Lindvold's obvious and serious medical needs.  Defendants Olson and Hannig deprived Warren Lindvold of adequate medical treatment in violation of his due process rights under the Fourteenth Amendment to the United States Constitution and constituted an unreasonable seizure under the Fourth Amendment, enforceable under 42 U.S.C. § 1983, and caused him severe and fatal bodily injuries, anguish, great pain, suffering, and physical anguish prior to his impending death on the 21st day of July, 2018.

353.     The conduct alleged herein was objectively unreasonable and done in deliberate disregard of Warren Lindvold's constitutionally protected rights; justifying the award of general and punitive damages against the individually named Defendants.

354.     WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

### FOURTH CAUSE OF ACTION

### VIOLATIONS OF THE FOURTEENTH AMENDMENT – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED (BARNES COUNTY JAIL)

### DEFENDANTS CHRISTOPHER OLSON, WADE HANNIG, JENNA JOCHIM, RICHARD CHASE, BRUCE POTTS, AND JESSE BURCHILL

### (42 U.S.C. 1983 – Violation of the 14th Amendment)

355.     The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

356.     Upon delivering Warren Lindvold to the Barnes County Jail, Defendants Olson and Hannig knowingly, intentionally, and with reckless and deliberate disregard of the truth and facts that they had personally witnessed, misrepresented, misstated, and minimized Warren Lindvold's serious medical needs in their communications to the Barnes County Jail, Barnes County Ambulance personnel, and agents of Mercy Hospital.  Defendants Olson and Hannig obstructed, prevented, and/or delayed Warren Lindvold from obtaining medical assistance by

omitting facts and falsely representing to the Barnes County Jail, Barnes County Ambulance personnel, and agents of Mercy Hospital that Warren Lindvold's obvious medical emergency was not real, was faked, and need not be taken seriously or be addressed. Defendants Jochim, Chase, Potts, and Burchill also obstructed, prevented, and/or delayed Warren Lindvold from obtaining medical assistance by omitting facts and falsely representing to Barnes County Ambulance personnel and to agents of Mercy Hospital that Warren Lindvold's obvious medical emergency was not real, was faked, need not be taken seriously or be addressed, and that he need only be medically cleared for intoxication and need not be treated for the obvious medical distress that Warren Lindvold repeatedly described and demonstrated to them.

357.    Warren Lindvold explained to Defendant Barnes County Correctional Officers that he was experiencing the most intense pain in his life, that he could not bend forward, could not move or feel his legs, was obviously unable to sit up on the bench in the booking area without support, was experiencing symptoms that he had never experienced before, was unable to walk or stand, repeatedly asked for medical assistance, explained to Correctional Officers that his condition wasn't the result of intoxication when Correctional Officers responded to his obvious distress and request for assistance with statements like "sleep it off" and "you'll feel better in the morning."  Warren Lindvold was not apparently intoxicated, was not displaying indicators of intoxication.

358.    By violating the procedures, protocols, practices, and actions on proper care of inmates with regard to cell checks, observations, medical monitoring, incident and log reports, and requests for assistance and medical attention, Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill were deliberately indifferent to Warren Lindvold's serious medical need.

359.    Upon arriving at the Barnes County Jail Warren Lindvold continued to demonstrate and explain his severe pain and medical emergency as heretofore alleged.  Warren Lindvold's exclamations, screams, shouts, actions, and statements made in the presence of Defendants Jochim, Chase, Potts, and Burchill during the time he was present and confined in the Barnes County Jail made it obvious to any objective person or layperson that Warren Lindvold was suffering a serious medical emergency and needed immediate medical attention for his obvious injuries.  Defendants Jochim, Chase, Potts, and Burchill had knowledge and were aware of Warren Lindvold's condition and medical need, but consciously and deliberately disregarded the same.  Warren Lindvold was left on the floor of his jail cell with a fractured neck, alone in the dark, and crying and pleading for help.  As an indication of the deliberate indifference and reckless disregard for the health and safety of Warren Lindvold, Defendant Jochim bragged to fellow Correctional Officers about how she twice refused Warren Lindvold's personal pleas for help and how she told him that since he got himself in those positions, on his back on the concrete floor and wedged into a corner, he could get himself out.  She joked that she wasn't going to "play that game" and that if they didn't like it they could "take it up."  On another occasion Defendant Jochim indicated that Warren Lindvold's bloodied condition, for which she refused assistance, made him "disgusting."  Defendants Chase and Potts, recipients of Jochim's communications, upon hearing these remarks, did nothing to assist Warren Lindvold or record or report Defendant Jochim's obvious conscious and deliberate disregard for Warren Lindvold's rights, security, safety, and significant medical needs.

360.    Warren Lindvold's pleas were not heard and when they were, they were ignored. The actions or omissions of Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill both before Warren Lindvold was first transported to Mercy Hospital and after his return, were

intentional, knowing, malicious, grossly reckless, and deliberately indifferent to Warren Lindvold's obvious and serious medical needs.  The acts and omissions of Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill deprived Warren Lindvold of and delayed him from obtaining adequate medical treatment in violation of his due process rights under the Fourteenth Amendment to the United States Constitution and constituted an unreasonable seizure under the Fourth Amendment, enforceable under 42 U.S.C. § 1983, causing him severe and fatal bodily injuries, anguish, great pain, suffering, and physical anguish prior to his death on the 21st day of July, 2018.   Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill had actual knowledge, both subjective and objective, of Warren Lindvold's serious medical need and deliberately ignored it.  Reasonable officers would have known that ignoring serious medical distress would violate an arrestee's constitutional rights and their actions were objectively unreasonable.

361.    Warren Lindvold's medical condition was treatable and his death preventable.  If Warren Lindvold had received timely and appropriate medical attention he would have avoided intense suffering and he would not have died.   Warren Lindvold suffered a protracted, extensively painful, and unnecessary death as a result of the Defendants' acts, omissions, and failures.

362.    The conduct alleged herein was done in deliberate or reckless disregard of Warren Lindvold's constitutionally protected rights; justifying the award of general and punitive damages against the individually named Defendants.

363.    WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

## FIFTH CAUSE OF ACTION

## VIOLATIONS OF THE FOURTEENTH AMENDMENT – MONELL LIABILITY, FAILURE TO TRAIN – FAILURE TO SUPERVISE-POLICY OR CUSTOM

**AGAINST BARNES COUNTY, BARNES COUNTY SHERIFF
RANDY MCCLAFLIN, AND FACILITY SUPERVISOR JULIE FORSMAN**

**(42 U.S.C. 1983)**

364.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

365.    Defendants Barnes County, Julie Forsman, and Sheriff McClaflin had no policy with regard to the care of inmates with serious medical needs.

366.    Defendants Barnes County, Forsman, and Sheriff McClaflin had inadequate policies and training regarding medical care for inmates, such that the policy allowed Defendants Jochim, Chase, Potts, and Burchill to deny Warren Lindvold any medical care without fear of repercussion.

367.    Defendants Barnes County, Forsman, and Sheriff McClaflin violated existing policies requiring transport to medical facilities, recognition of serious medical needs of inmates, cell checks, incident reports, operating the Barnes County Jail with inadequate staff, failure to provide adequate medical screening, intake procedures, and documentation of observations of inmates with medical needs and which required medical attention.  At the time Warren Lindvold was incarcerated, there were longstanding and systemic deficiencies in the Barnes County Jail's treatment, supervision, housing, and management of inmates.  These specific deficiencies, previously set out in this Complaint, resulted in a pending closure order and repeated inspection violations.  Such deficiencies and omissions give rise to an official policy or custom and an unofficial policy or custom, that was continuing, widespread and persistent pattern of unconstitutional misconduct, resulted in unconstitutional misconduct by employees of the Barnes

County Jail and directly resulted in the injury, death, and deprivation of the Constitutional rights of Warren Lindvold.

368. The failure and refusal of Defendants Barnes County, Forsman, and Sheriff McClaflin to train its deputies on the treatment of inmates with serious medical needs gives inference of a county and municipal custom that authorized and condoned deputy misconduct.

369. The failure and refusal of Defendants Barnes County, Forsman, and Sheriff McClaflin to adequately train its deputies on the use of force and avoidance of excessive force gives inference of a county and municipal custom that authorized and condoned correctional officer/deputy misconduct.

370. Defendants Barnes County, Forsman, and Sheriff McClaflin had a custom and practice of disbelieving complaints of inmates when such inmates requested medical attention for serious medical needs and denying such inmates access to adequate and appropriate medical care.  (See Defendant Jochim's comments about her earlier conduct with another inmate).

371. Defendants Barnes County, Forsman, and Sheriff McClaflin had a custom and practice of failing to observe, recognize, or communicate the medical needs of inmates and the visible observation and symptoms of such inmates from deputies to trained medical staff.

372. Defendants Barnes County, Forsman, and Sheriff McClaflin may be held liable for their policy of inaction when such inaction amounts to a deliberate indifference, deliberate choice and a failure to protect the constitutional rights of inmates.  A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  The unofficial policy of inaction used by Defendants Barnes County, Forsman, and Sheriff McClaflin was an official policy and/or custom and the decision to adopt that particular course of inaction

by the government's authorized decision maker amounts to a policy. Such an official policy evidenced a deliberate indifference to the serious medical needs of inmates such as Warren Lindvold.

373.   Defendants Barnes County, Forsman, and Sheriff McClaflin's policy of failing to provide medical care for inmates having medical needs and failing to train deputies in how to care for, monitor, and recognize such inmates with a high risk of harm amounts to a deliberate indifference to the constitutional rights of such inmates. The failure to train deputies in recognizing when a person in their custody is in need of medical assistance for a serious medical need amounts to deliberate indifference.

374.   The policy of Defendants Barnes County, Forsman, and Sheriff McClaflin for failure to provide medical care for inmates and failure to train deputies in how to care for, monitor, and recognize inmates with obvious health issues and serious medical needs was the moving force behind the constitutional violation and caused the death of Warren Lindvold.

375.   Defendants Barnes County, Forsman, and Sheriff McClaflin have a policy and practice of failing to train deputies to provide adequate medical care to inmates at the Barnes County Jail. The lack of training is a result of Barnes County, Julie Forsman, and Sheriff McClaflin's deliberate indifference to the serious medical needs inmates experiencing significant medial issues.

376.   Defendants Barnes County, Forsman, and Sheriff McClaflin have a policy and practice of failing to train deputies on the serious risk of harm and death associated with ignoring the serious medical needs of inmates, failing to train deputies to recognize the obvious signs of medical distress, and how to reliably and safely monitor inmates.

377.    It was reasonably foreseeable that the deficient policies of Defendants Barnes County, Forsman, and Sheriff McClaflin for managing inmates with serious medical conditions and failure to provide meaningful training to deputies would lead to the pain, suffering, and death of Warren Lindvold.

378.    The policy and practice of Defendants Barnes County, Forsman, and Sheriff McClaflin to inadequately train Correctional Officers and employees on how to provide meaningful treatment for inmates supports a finding of deliberate and reckless indifference.

379.    Defendants Sheriff McClaflin, Forsman, Jochim, Chase, Potts, and Burchill with reckless disregard failed to train deputies on conducting proper cell checks, to observe and document the medical status of inmates, and to ascertain when inmates were in need of medical assistance, in distress, paralyzed, or suffered a stroke.

380.    Defendants Sheriff McClaflin, Forsman, Jochim, Chase, Potts, and Burchill failed to train deputies and develop policies on how to timely conduct an initial evaluation to determine if an inmate is at risk for suffering seizures, serious medical health issues, fractured spines, strokes, and paralysis.

381.    Defendants Sheriff McClaflin, Forsman, Jochim, Chase, Potts, and Burchill, failed to train deputies and develop policies to ensure medical staff make the decision on who should be placed in an observation cell and who should be transferred to the hospital to be treated for significant health issues.

382.    These constitutionally infirm policies and lack of adequate training caused Warren Lindvold's injuries, suffering, and death.

383.    As a direct and proximate result of the conduct of Barnes County, Forsman, and Sheriff McClaflin, Warren Lindvold experienced physical pain, severe emotional distress, and mental anguish for days, and died in agony.

384.    The conduct alleged herein was done intentionally, with deliberate or reckless disregard of Warren Lindvold's constitutionally protected rights; justifying the award of general and punitive damages against the individually named Defendants.

385.    WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

386.    Defendants Sheriff McClaflin and Forsman failed to provide adequate supervision to the staff who are required to render medical care, and/or to alert medical staff that meets the standards of the Constitution.

387.    Defendants Sheriff McClaflin and Forsman failed to provide adequate supervision to officers that hold the power, authority, insignia, and equipment entrusted to them.

388.    Defendants Sheriff McClaflin and Forsman failed to promulgate and enforce adequate policies and procedures related to the violation of citizens' civil rights by deputies and correctional officers.

389.    Defendants Sheriff McClaflin and Forsman failed to provide promulgate corrective policies and regulations in the face of repeated constitutional violations, closure orders, and failed inspections by the Department of Corrections.

390.    Defendants Sheriff McClaflin and Forsman failed to follow existing policies regarding cell checks, observation, documentation of incidents, intake procedures, staffing, and requests for medical attention.

391.    Defendants Sheriff McClaflin and Forsman set in motion a series of acts by others or knowingly refused to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict a constitutional injury.

392.    Defendant Sheriff McClaflin is liable for his own culpable actions and/or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that shows a reckless or callous indifference to the rights of others.

392.1   Defendant Forsman is liable for her own culpable actions and/or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the constitutional deprivation; or for conduct that shows a reckless or callous indifference to the rights of others.

393.    A sufficient causal connection exists between the above described supervisory misconduct and the constitutional violations and injuries herein described.

394.    As a direct and proximate result of Defendants' conduct, Warren Lindvold experienced physical pain, severe emotional distress, and mental anguish for days, as well as death.

395.    The conduct alleged herein caused Warren Lindvold to be deprived of his civil rights that are protected under the United States Constitution.  Said conduct also legally, proximately, foreseeably, and actually caused Warren Lindvold to suffer emotional distress, pain, and death.

396.    The conduct alleged herein was done in deliberate or reckless disregard of Warren Lindvold's constitutionally protected rights; justifying the award of general and punitive damages against the individually named defendants.

397.    WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

## SIXTH CAUSE OF ACTION

## VIOLATIONS OF THE FOURTEENTH AMENDMENT – MONELL LIABILITY, FAILURE TO TRAIN AND PROPERLY SUPERVISE

## AGAINST THE CITY OF VALLEY CITY

### (42 U.S.C. 1983 – Violations of the 14th Amendment)

398.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

399.    Defendant Valley City may be held liable for acts of omission when such omissions amount to an official policy.  Acts of omission, as well as commission, may constitute the predicate for a finding of liability under section 1983.

400.    Defendant Valley City failed to train or supervise its police officers in a manner that provided for the serious medical needs of individuals and prisoners, recognition of circumstances requiring transportation and medical treatment such as when they are suffering from visible, open and bleeding wounds and injures caused by force applied during the arrest and detention by Valley City Police Officers, the proper use of force and restraints,  recognition of when elderly or handicapped individuals were not appropriate for handcuffs, pain compliance holds including wrist locks or wrenching of handcuffed arms, hoisting elderly individuals vertically by their handcuffed arms when the officers are on notice that the individual suffers medical conditions such as ankylosing spondylitis, arthritis in back, neck and shoulders, and are presently experiencing chronic pain at the time of arrest.  The need for more or different training was obvious and the inadequacy of Valley City's policies of failing to provide training and supervision of its officers was obvious.  The need to provide medical treatment for prisoners with serious medical needs was obvious.  Because the combined inadequacy of these failures was highly likely to result in the violation of constitutional rights of detainees to be unlawfully

arrested, assaulted, and experience serious medical needs, policymakers in Valley City can be reasonably said to have been deliberately indifferent.

401. On information and belief, there were longstanding and systemic deficiencies and omissions in the training, supervision, and recognition of when medical attention was necessary.

402. Such deficiencies and omissions give rise to a policy or custom of failing to take remedial steps when necessary.

403. The failure and refusal Defendant Valley City to train or supervise its officers as previously alleged gives inference of a municipal custom that authorized or condoned police officer misconduct.

404. Defendant Valley City had a de facto policy of permitting unconstitutional and lawless conduct by its employees.

405. Defendant Valley City was deliberately indifferent to Warren Lindvold's right to be free from, and protected from, the deliberate indifference and misconduct of its employees.

406. As a direct result of Defendant Valley City's longstanding custom and practice of deliberate indifference to the serious medical needs of the detainees of its police officers, unlawful and excessive force, and unlawful arrests it was deliberately indifferent to a substantial risk of serious harm to arrestees such as Warren Lindvold.

407. The unlawful and illegal conduct of Defendant Valley City, its policies, procedures, customs, and practices deprived Warren Lindvold of the rights, privileges, and immunities secured to him by the Constitution of the United States.

408. As a direct, proximate and foreseeable result, Plaintiff suffered damages in an amount according to proof at time of trial.

409. WHEREFORE, PLAINTIFF prays judgment as herein below set forth.

**SEVENTH CAUSE OF ACTION**

**WRONGFUL DEATH AND VIOLATIONS OF NORTH DAKOTA CENTURY CODE § 32-21-01**

**AGAINST ALL DEFENDANTS**

410.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

411.    Defendants owed a duty of care to Warren Lindvold and breached that duty as alleged in previous paragraphs of this complaint.

412.    Defendants' breach of duty was a direct and proximate cause of Warren Lindvold's death.

413.    Decedent is survived by his sister, the Personal Representative of his estate, and brings this action pursuant to N.D.C.C. § 32-21 (Death by Wrongful Act) for the benefit of all who are entitled to recover damages for Warren Lindvold's death.

414.    As a direct result of Warren Lindvold's death, Plaintiff incurred economic damages in an amount to be proven at trial, arising from medical, funeral, and burial costs as set forth in N.D.C.C. § 32-03.2-04.

415.    As a result of Warren Lindvold's death, Plaintiff has suffered non-economic damages including, but not limited to, mental anguish, emotional distress, grief, loss of society, loss of companionship, and such other damages as set forth in N.D.C.C. § 32-21 et seq. and N.D.C.C. § 32-03.2-04.

416.    Plaintiff is entitled to exemplary and punitive damages due to the negligence and extreme indifference to human life displayed by the Defendants.

**EIGHTH CAUSE OF ACTION**

**FALSE IMPRISONMENT**

**AGAINST DEFENDANTS VALLEY CITY,  CHRISTOPHER OLSON, WADE HANNIG, BARNES COUNTY, BARNES COUNTY SHERIFF RANDY MCCLAFLIN, JULIE FORSMAN, JENNA JOCHIM, RICHARD CHASE, BRUCE POTTS, AND JESSE BURCHILL**

417.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

418.    On July 15, 2018, Warren Lindvold was subjected to a warrantless and unjustified arrest in Valley City by Defendants Hannig and Olson, who were both employed by the Valley City Police Department at the time of the arrest.

419.    Defendant Olson threatened Warren Lindvold with additional charges if he was going to resist arrest after Warren Lindvold attempted to explain that he was not intoxicated, but was in a lot of pain.  Defendant Olson placed handcuffs on Warren Lindvold and forced him into the police car.

420.    As a result of the false arrest, Warren Lindvold suffered damages as stated herein.

## NINTH CAUSE OF ACTION

## ASSAULT AND BATTERY

### AGAINST DEFENDANTS CHRISTOPHER OLSON, WADE HANNIG, JENNA JOCHIM, RICHARD CHASE, BRUCE POTTS, AND JESSE BURCHILL

421.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

422.    The actions of Defendants Olson, Hannig, Chase, Potts, and Burchill willfully caused bodily restraint or harm to Warren Lindvold or placed him in immediate apprehension of bodily restraint or harm.

423.     The actions of Defendants Olson, Hannig, Chase, Potts, and Burchill intentionally caused a harmful or offensive contact with Warren Lindvold and directly or indirectly resulted in harmful or offensive contact with Warren Lindvold.

424.     As a result of this assault and battery, Warren Lindvold suffered damages.

## TENTH CAUSE OF ACTION

## NEGLIGENCE

## AGAINST DEFENDANT VALLEY CITY AND BARNES COUNTY

425.     The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

426.     Defendant Barnes County owed Warren Lindvold a duty of care, including but not limited to, monitoring inmates, training correctional officers, employing trained correctional officers, and incarcerating people in a facility that is safe and satisfies the minimum standards imposed by rule and by law.

427.     Defendant Valley City owed Warren Lindvold a duty of care, including, but not limited to, employing qualified officers, training employees to recognize medical emergencies, use of force, pain compliance tactics, and basic education.

428.     Defendants Barnes County and Valley City breached their duty to Warren Lindvold, which resulted in serious bodily harm, pain and suffering, mental anguish, and death.

## ELEVENTH CAUSE OF ACTION
## GROSS NEGLIGENCE

## AGAINST DEFENDANTS CHRISTOPHER OLSON, WADE HANNIG, JENNA JOCHIM, RICHARD CHASE, BRUCE POTTS, JESSE BURCHILL, BARNES COUNTY, AND VALLEY CITY

429.     The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

430.     At all times relevant hereto a "special relationship" within the meaning of N.D.C.C. § 32-12.1-03(g)(3) existed between Warren Lindvold and Barnes County and its employees Defendants Sheriff McClaflin, Forsman, Jochim, Chase, Potts, and Burchill and Valley City and its employees Defendants Olson and Hannig.

431.     Warren Lindvold was unlawfully arrested, assaulted, battered, incarcerated, and was under the direct total control of said employees.  By reason of said direct control he was wholly dependent upon said Defendants for his hydration, nutrition, health, safety, medical care, and communications with anyone other than the Defendants.

432.     By such conduct Defendants assumed and were in fact responsible to act on behalf of Warren Lindvold to safeguard his health and safety, a duty every arrestee or inmate must necessarily rely on.

433.     Defendants acted in reckless disregard in carrying out their aforesaid duty to Warren Lindvold and should have known that serious injury would occur or that their failure to act would result in further injury to Warren Lindvold.

434.     This breach of duty resulted in Warren Lindvold's injuries, prolonged suffering and ultimate death.

## TWELFTH CAUSE OF ACTION

### ABUSE OF PROCESS

### AGAINST DEFENDANT CHRISTOPHER OLSON

435.     The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

436.    On or about July 15, 2018, Defendant Olson intentionally drafted and served upon Warren Lindvold a "Report and Notice Under Chapter 39-20 or 39-06.2 NDCC", a document that commenced a civil administrative license revocation proceeding.  By this action Defendant Olson commenced a legal proceeding against Warren Lindvold that would have resulted in a six month driver license revocation that would have become final ten days after Defendant Olson served the document absent affirmative action by Warren Lindvold.

437.    Defendant Olson falsely and fraudulently reported and certified in this document that Warren Lindvold had refused an onsite screening test and refused a chemical test.  Warren Lindvold had refused neither, and had in fact submitted to an onsite screening test that was valid pursuant to the methods adopted by the North Dakota State Toxicologist and the manufacturer of the device.  Warren Lindvold had twice agreed to take a requested chemical test and thereafter affirmatively requested to test.

438.    Defendant Olson falsely withheld from Warren Lindvold and others that Warren Lindvold's results of the screening test showed that he was by law presumed to not be under the influence.

439.    Defendant Olson informed Warren Lindvold that he did not refuse the screening test.  Defendant Olson intentionally, knowingly, and purposefully defied state statute, refused to inform, and withheld from Warren Lindvold the mandatory advisement contained in N.D.C.C. § 39-08-01(2)(b).

440.    Defendant Olson purposefully, intentionally, and unlawfully denied Warren Lindvold's post-arrest request to take a breath test after Defendant Olson informed Warren Lindvold that his inability to stand or walk was being treated as a refusal.  Defendant Olson knew from the aforementioned screening test results that Warren Lindvold would have tested

71

under the 0.08 legal limit and would not have been subject to any license suspension or revocation.

441.    Defendant Olson intentionally, purposefully, unlawfully, and maliciously obstructed and perverted the administrative legal process to cause the revocation of Warren Lindvold's driving privileges, by falsely reporting and certifying facts the he knew were false and for which he intended to result in harm, disadvantage, and deprivation of Warren Lindvold's rights.

442.    As a result of Defendant Olson's wrongful abuse of process Warren Lindvold suffered damages.

## THIRTEENTH CAUSE OF ACTION

## SURVIVORSHIP CLAIM

## AGAINST ALL DEFENDANTS

443.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

444.    Defendants owed a duty of care to Warren Lindvold and breached that duty as alleged in previous paragraphs of this complaint.

445.    Defendants' breach of duty was a direct and proximate cause of Warren Lindvold's death.

446.    Plaintiff is the Personal Representative of the Estate of Warren S. Lindvold, and properly continues this cause of action on behalf of the Decedent Warren Lindvold pursuant to N.D.C.C. § 30.1-18-03(3).

447.    Warren Lindvold experienced conscious pain and suffering, emotional distress, mental anguish, and incurred medical expenses from the time of arrest on July 15, 2018, to the time of his death on July 21, 2018.

448.    The conscious pain and suffering, emotional distress, mental anguish experienced, and the medical expenses incurred by Warren Lindvold were a direct and proximate result of the negligence of the Defendants.

## FOURTEENTH CAUSE OF ACTION

## HEALTH CARE MALPRACTICE CLAIM

## AGAINST DEFENDANT BARNES COUNTY AMBULANCE FOR THE PERSONAL INJURY AND WRONGFUL DEATH OF WARREN LINVOLD

449.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

450.    On July 15, 2018 Barnes County Ambulance provided medical services to Warren Lindvold by transporting him from the Barnes County Jail to Mercy Hospital in Valley City, North Dakota.

451.    Medical services were provided to Warren Lindvold by EMT Rippley, EMT Miller, and EMT Anderson, EMTs who at all times were acting as employees and/or agents of Barnes County Ambulance.

452.    Rippley, Miller, and Anderson arrived at the Barnes County Jail at 1:48 a.m. and assessed Warren Lindvold.  Defendants' assessment of Warren Lindvold was recorded by the Barnes County Jail.

453.    Warren Lindvold informed Rippley, Miller, and Anderson that he suffered from ankylosing spondylitis, that he had experienced a sudden onset of severe neck and shoulder pain,

which continued for approximately three hours, and that the pain was the worst pain he had ever felt in his life.

454.     Warren Lindvold informed Rippley, Miller, and Anderson that the pain started when Defendant Olson pulled his arms behind his back when Warren Lindvold was handcuffed.

455.      Rippley, Miller, and Anderson transported Warren Lindvold to the ambulance using a stair chair and then a cot.

456.     Warren Lindvold was taken to Mercy Hospital by Rippley, Miller, and Anderson and Warren Lindvold's care was transferred to Sherri Lutjens, RN.

457.     The agents and employees of Defendant, Barnes County Ambulance were negligent in their evaluation, care, treatment, and transport of Warren Lindvold to Mercy Hospital in Valley City, North Dakota.

458.     The negligence of the agents and employees of Defendant, Barnes County Ambulance,  includes but is not limited to:

   –   Failing to properly and adequately evaluate Warren Lindvold's fractured cervical spine;

   –   Failing to immobilize or otherwise protect Warren Lindvold's fractured cervical spine from additional injury during transportation to the hospital;

   –   Failing to provide the hospital staff with an appropriate history and assessment of Warren Lindvold's fractured cervical spine; and

   –   Failing to inform the hospital staff that Warren Lindvold suffered from ankylosing spondylitis.

459.     As a direct and proximate result of the negligence of the agents and employees of Defendant Barnes County Ambulance, Warren Lindvold suffered severe and permanent personal injuries leading up to and causing his death on July 21, 2018.

460.     As a direct and proximate result of the negligence of the agents and employees of Defendant Barnes County Ambulance, Warren Lindvold suffered special and general damages,

including but not limited to medical expenses, funeral expenses, pain, fear, sufferings, severe emotional distress, and death.

461.    As a direct and proximate result of the negligence of the agents and employees of Defendant Barnes County Ambulance, Warren Lindvold's sister suffered general damages as a result of the wrongful death of Warren Lindvold.

462.    <u>Statement of Compliance with N.D.C.C. §32-42-03</u>:  As Plaintiff's attorneys we have advised her about reasonably available alternative dispute resolution options that may be available to assist the parties in settling this claim. A good faith effort has been made to resolve this health care malpractice claim before this lawsuit was initiated.  Plaintiff remains willing to participate in any reasonable, mutually acceptable alternative dispute resolution that may be available to the parties to settle this claim.

**FIFTEENTH CAUSE OF ACTION**

**HEALTH CARE MALPRACTICE CLAIM**

**AGAINST DEFENDANTS MERCY HOSPITAL OF VALLEY CITY D/B/A CHI MERCY HEALTH AND NATIONAL MEDICAL RESOURCES, INC FOR THE PERSONAL INJURY AND WRONGFUL DEATH OF WARREN LINVOLD**

463.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

464.    On July 15, 2018, Mercy Hospital of Valley City d/b/a CHI Mercy Health provided medical services to Warren Lindvold.

465.    Medical services at Mercy Hospital were provided to Warren Lindvold by Mark Klabo, PA and Sheri Lutjens, RN who at all times were acting as employees and/or agents of Mercy Hospital of Valley City d/b/a CHI Mercy Health.

466.    Medical services at Mercy Hospital were provided to Warren Lindvold by Mark Klabo, who at all times was acting as an employee and/or agent of Defendant National Medical Resources, Inc.

467.    Defendants Mercy Hospital and Medical Resources had entered into an agreement whereby Defendant Medical Resources provided employees or agents of Defendant Medical Resources, including Mark Klabo, to staff the emergency room and provide medical care to patients of Defendant Mercy Hospital, including Warren Lindvold.

468.    Prior to July 15, 2018, Warren Lindvold had received medical care and treatment at Mercy Hospital of Valley City d/b/a CHI Mercy Health.

469.    Defendant Mercy Hospital of Valley City d/b/a CHI Mercy Health maintained medical records documenting that Warren Lindvold suffered from ankylosing spondylitis, paresthesia in both legs, and cognitive limitations including amnesia with supervision recommended.

470.    After arriving at the hospital Warren Lindvold was evaluated and treated by PAC Mark Klabo.

471.    In his initial history for Warren Lindvold PAC Klabo stated:

Pt. was picked up today by law enforcement for impaired driving.  He was brought to ER for a legal blood draw.  Shortly before law enforcement was leaving the ER, pt. began complaining of muscle soreness to his neck and upper back area.  PT. states that he has been active lately and also has a history of arthritis.

He states that the discomfort is made worse with movement of the head, neck and arms and it is potentiated with palpation of the muscles involved.

472.    PAC Klabo's initial history was inaccurate and contained false statements concerning why Warren Lindvold was at the emergency room, when his neck and shoulder pain started, and the cause of his neck and shoulder pain.

473.    PAC Klabo's initial history did not include that that Warren Lindvold suffered from ankylosing spondylitis, paresthesia in both legs, and cognitive limitations.

474.    PAC Klabo examined Warren Lindvold's neck and reported: "Neck: Normal inspection, supple, Full Range of Motion, Tender Lateral."

475.    On June 12, 2018, Warren Lindvold's regular doctor, Dr. James Buhr, examined Warren Lindvold and stated in his examination notes that Warren Lindvold had ankylosing spondylitis with complete fusion cervical spine no rotation and that Warren Lindvold's cervical spine was completely immobile.

476.    PAC Klabo noted that Warren Lindvold was intoxicated.

477.    PAC Klabo treated Warren Lindvold with an injection of Toradol.

478.    Toradol is not to be given to a person that has consumed alcohol.

479.     The agents and employees of Defendants Mercy Hospital and Medical Resources were negligent in their evaluation, care, and treatment of Warren Lindvold.

480.    The negligence of the employees and agents of Defendants Mercy Hospital and Medical Resources includes but is not limited to:

- Failing to properly and adequately diagnose and evaluate Warren Lindvold's fractured cervical spine;

- Failing to immobilize or otherwise protect Warren Lindvold's fractured cervical spine from additional injury;

- Failing to provide immediate appropriate treatment for Warren Lindvold's fractured cervical spine;

- Failing to obtain an appropriate and accurate medical history for Warren Lindvold;

- Failing to perform an accurate and appropriate physical examination of Warren Lindvold;

- Treating Warren Lindvold with Toradol after Warren Lindvold had consumed alcohol; and

- Allowing Warren Lindvold to be returned to the Barnes County Jail with a fractured cervical spine.

481.     As a direct and proximate result of the negligence of the employees and agents of Defendants Mercy Hospital and Medical Resources, Warren Lindvold suffered severe and permanent personal injuries leading up to and causing his death on July 21, 2018.

482.     As a direct and proximate result of the negligence of the employees and agents of Defendants Mercy Hospital and Medical Resources, Warren Lindvold suffered special and general damages, including but not limited to medical expenses, funeral expenses, pain, fear, suffering, severe emotional distress and death.

483.     As a direct and proximate result of the negligence of the employees and agents of Defendants, Mercy Hospital and Medical Resources, Warren Lindvold's sister suffered general damages as a result of the wrongful death of Warren Lindvold.

484.     Statement of Compliance with N.D.C.C. §32-42-03:  As Plaintiff's attorneys we have advised her about reasonably available alternative dispute resolution options that may be available to assist the parties in settling this claim. A good faith effort has been made to resolve this health care malpractice claim before this lawsuit was initiated.  Plaintiff remains willing to participate in any reasonable, mutually acceptable alternative dispute resolution that may be available to the parties to settle this claim.

## SIXTEENTH CAUSE OF ACTION

## PATIENT DUMPING IN VIOLATIONOF 42 U.S.C. § 1395DD

## AGAINST DEFENDANTS MERCY HOSPITAL OF VALLEY CITY D/B/A CHI MERCY HEALTH THE PERSONAL INJURY AND WRONGFUL DEATH OF WARREN LINVOLD

485.     Defendant Mercy Hospital operates an emergency department.

486.     On or about July 15, 2018, Warren Lindvold was brought to Defendant Mercy Hospital's emergency department for examination and treatment of his medical condition.

487. Warren Lindvold was suffering from an emergency medical condition when he was brought to Defendant Mercy Hospital's emergency department for examination and treatment of his medical condition.

488. Defendant Mercy Hospital failed to provide an appropriate medical screening examination of Warren Lindvold within the capabilities of Defendant Mercy Hospital's emergency department and ancillary services routinely available to the emergency department.

489. Defendant Mercy Hospital failed to stabilize Warren Lindvold's emergency medical condition before discharging him.

490. Defendant Mercy Hospital failed to transfer Warren Lindvold to an appropriate medical facility to treat his emergency medical condition before discharging him.

491. Defendant Mercy Hospital transferred Warren Lindvold to the care and custody of Defendants Valley City, Barnes County, and Sheriff McClaflin without obtaining a certification from a physician that the transfer was reasonable.

492. As a direct and proximate result of Defendant Mercy Hospital's violation of U.S.C. § 1395dd Warren Lindvold suffered special and general damages, including but not limited to medical expenses, funeral expenses, pain, fear, suffering, severe emotional distress and death.

493. As a direct and proximate result of Defendant Mercy Hospital's violation of U.S.C. § 1395dd, Warren Lindvold's sister suffered general damages as a result of the wrongful death of Warren Lindvold.

### SEVENTEENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### AGAINST DEFENDANTS CHRISTOPHER OLSON, WADE HANNIG, JENNA JOCHIM, RICHARD CHASE, BRUCE POTTS, AND JESSE BURCHILL

494.    The Plaintiff repeats, reiterates, and realleges each and every allegation and incorporates all preceding paragraphs above, as if fully stated herein.

495.    At all times material herein Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill acted in concert to intentionally inflict Warren Lindvold with emotional distress of such nature and substantial quantity that no reasonable person should be expected or required to endure.

496.    At all times material herein the intentional actions of Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill consisted of extreme and outrageous conduct beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in our civilized society.

497.    At all times material herein Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill aided or encouraged each of the other Defendants in their intentional infliction of emotional distress upon Warren Lindvold.

498.    At all times material herein Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill ratified and adopted the actions of the other Defendants in their intentional infliction of emotional distress upon Warren Lindvold.

499.    At all times material herein Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill were in a position of actual and apparent authority over Warren Lindvold in their positions as law enforcement employees.

500.    At all times material herein Defendants Olson, Hannig, Jochim, Chase, Potts, and Burchill abused their position of actual and apparent authority over Warren Lindvold in their positions as law enforcement employees to intentionally inflict emotional distress on Warren Lindvold.

501.    The Defendants individually and in concert intentionally engaged in extreme and outrageous conduct intended to and did in fact inflict severe emotional distress on Warren Lindvold.

502.    The Defendants' intentional, extreme, and outrageous conduct that was intended to and did in fact inflict severe emotional distress on Warren Lindvold includes, but was not necessarily limited to:

a.   Ignoring the PBT results showing Warren Lindvold had a 0.03 BAC establishing a presumption that Warren Lindvold was not under the influence of alcohol;

b.   Arresting, detaining, and falsely imprisoning Warren Lindvold without a warrant and in the absence of probable cause;

c.   Using unnecessary and excessive force against Warren Lindvold;

d.   Handcuffing both of Warren Lindvold's arms behind his back when he posed no threat to the law enforcement officers involved;

e.   Failing and refusing to remove or reposition the handcuffs when Warren Lindvold informed the law enforcement officers involved that having his arms handcuffed behind his back was causing severe and unnecessary pain;

f.   Locking the handcuffs so tight that they cut and lacerated Warren Lindvold's skin causing it to bleed;

g.   Locking the handcuffs so tight that they caused severe and unnecessary pain;

h.   Grabbing Warren Lindvold by his arms that were handcuffed behind his back and dragging him backwards to a patrol vehicle;

i.   Grabbing Warren Lindvold by his arms that were handcuffed behind his back and yanking him backwards onto the back seat of the patrol vehicle;

81

j.   Failing to evaluate Warren Lindvold's complaints of pain and paralysis caused by his fractured spine while handcuffing his arms behind his back and dragging him to the patrol vehicle;

k.   Failing to obtain medical attention for Warren Lindvold's complaints of pain and paralysis caused by his fractured spine while handcuffing his arms behind his back and dragging him to the patrol vehicle;

l.   Ignoring Warren Lindvold's complaints of pain and paralysis at the Barnes County Jail;

m.   Demeaning and denigrating Warren Lindvold when he reported his severe excruciating pain, advised Defendants the he could not move, and requested medical attention for his pain and because he felt like he was dying;

n.   Failing to evaluate Warren Lindvold's complaints of pain and paralysis at the Barnes County Jail;

o.   Refusing to provide any type of medical care or treatment for Warren Lindvold's pain and paralysis at the Barnes County Jail;

p.   Failing and refusing to provide Warren Lindvold medical care and treatment for his bleeding arms and wrists caused by the cuts and lacerations inflicted when the handcuffs were locked tighter than reasonable or necessary;

q.   Denigrating Warren Lindvold as a human being by spending more time and being more concerned with cleaning Warren Lindvold's blood off the handcuffs than responding to Warren Lindvold's pleas for help caused by his pain and paralysis;

r.   Attempting to convince other law enforcement officers to refuse Warren Lindvold's requests to obtain a medical evaluation of his pain and paralysis;

82

s.   Intentionally interfering with Warren Lindvold's attempts to obtain medical care and treatment by providing false information concerning Warren Lindvold's condition to the ambulance personnel eventually called to transfer Warren Lindvold to the hospital;

t.   Intentionally interfering with Warren Lindvold's attempts to obtain medical care and treatment by providing false information concerning Warren Lindvold's condition to the hospital staff;

u.   Leaving Warren Lindvold unattended in his jail cell while he was dying from his fractured cervical vertebrae; and

v.   Ignoring Warren Lindvold's pleas and calls for help while he was left unattended in his jail cell while he was dying from his fractured cervical vertebrae.

504.   As a direct and proximate result of the Defendants' intentional acts Warren Lindvold did incur extreme and severe emotional distress.

505.   As a direct and proximate result of the Defendants' intentional acts Warren Lindvold did incur extreme and severe emotional distress which caused him general damages including but not limited pain, fear, despair and severe emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follow:

A.   Issue a judgment declaring that the actions of Defendants described herein are unlawful and violate Plaintiffs' rights under the constitution and laws of the United States;

B.   For general damages in a sum according to proof;

C.   For special damages in a sum according to proof;

D.  For punitive damages in a sum according to proof;

E.  For leave to amend or supplement the Complaint when evidence is uncovered;

F.  For declaratory relief;

G.  For reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

H.  For cost of suit herein incurred; and

I.  For such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby requests a jury trial on all claims so triable.

Dated:  February 26, 2020.


   /s/  Al Baker

Al Baker (ND ID 04122)
Attorney for Plaintiff
Southwood Plaza, Ste., 202
1336 25th Ave. S.
Fargo, ND 58103
Telephone:  701-630-1846
al@elawpros.com

   /s/  Rachel M. Gehrig

Cash H. Aaland (ND ID 04686)
Rachel M. Gehrig (ND ID 06869)
Attorneys for Plaintiff
Aaland Law Office, Ltd
415 11th St. S.; P.O. Box 1817
Fargo, ND  58107-1817
Telephone:  701-232-7944
officemanager@aalandlaw.com