**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | |
|---|---|
| LuAnne Janssen, as Personal Representative of the Estate of Warren S. Lindvold,<br><br>Plaintiff,<br>vs.<br><br>City of Valley City et al.<br><br>Defendants. | Case No. 3:19-cv-79<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO THE VALLEY CITY DEFENDANTS' MOTION TO COMPEL** |

1.      As used in this case the term the "Defendants" applies only to the Valley City Defendants that have filed this pending Motion to Compel). Unless otherwise noted, reference to Rules are to Federal Rules of Civil procedure.

2.      Litigation is based on an adversary system where each party chooses their legal counsel to zealously represent their interests. The Eighth Circuit's application of the modern Federal Rules of Civil Procedure, especially the rules related to discovery, recognize and respect the adversarial nature of litigation.

3.      The Federal Rules of Civil Procedure are intended to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule 1. Substantial revisions were made to Rule 26 in 1970. *See*, Notes of Advisory Committee on Rules – 1970 Amendment. The revisions were driven, in part by the U.S. Supreme Court's work product protections delineated in *Hickman v. Taylor*, 329 U.S. 495 (1947). The Advisory Committee specifically noted, "the requirement of a special showing for discovery of trial preparation materials **reflects the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare**

1

**independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side**." *Id.* (emphasis added).

4.     Rule 26(a) requiring initial disclosures were adopted in 1993. *See*, Notes of Advisory Committee on Rules – 1993 Amendment. The Rule 26(a) initial disclosure requirements were refined by the 2000 Rule 26 amendments. *See*, Notes of Advisory Committee on Rules – 2000 Amendment.

## TRIAL PREPARATION: ATTORNEY WORK PRODUCT

5.     Plaintiff's objections are supported by the trial preparation and work product protection found in Rule 26 and the seminal cases of *Hickman v. Taylor* 329 U.S. 495 (1947) and *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).  The Defendants' dispute has nothing to do with disclosure of information.  The Defendants complain because Plaintiff refuses to disclose her attorneys' trial preparations and work product by collating and categorizing facts and documents that have already been disclosed, into the legally defined sub-categories and lists demanded by the Defendants.

6.     *Hickman* applies not only to reports of oral statements but also to other information used by an attorney in the course of preparation for litigation. *Hickman* at 497. "Examination into a person's files and records, including those resulting from the professional activities of an attorney, must be judged with care." *Id.*

7.     "Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. **Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from**

2

**the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.** (emphasis added). *Id.* at 510-11. In his concurring opinion Justice Jackson added at page 516: "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary."

8.     The *Shelton* Court noted: "Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy." *Shelton* at 1327. The *Hickman* work product protections were reaffirmed by the Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), where Justice Rehnquist, quoting from *Hickman* stated the Court rejected, "an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. *Upjohn Co.* at 397. Further:

> The "strong public policy" underlying the work product doctrine was reaffirmed recently in *United States v. Nobles*, 422 U.S. 225, 236-240 (1975), and has been substantially incorporated in Federal Rule of Civil Procedure 26(b)(3).

*Id.* at 398. While *Hickman* and *Upjohn* did not specifically deal with the collating and categorizing subsets of disclosed historical facts, they do provide explanations of what is protected attorney's work product. An attorney's work product includes the sifting through the assembled facts to separate the relevant from the irrelevant facts while planning strategy and preparing legal theories. *Hickman* at 511.   Protected work product includes the "the attorneys mental process." *Upjohn* at 400.   Work product is the "lawyer's thinking." *Id.* at 401. An attorney's "mental process" in evaluating factual

information related to a case are work product that cannot be disclosed "simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *Id.*

THE EIGHTH CIRCUIT WORK PRODUCT STANDARD AND APPLICATION

9.      *Shelton* is a leading Eighth Circuit case concerning protected work product. *Shelton* specifically addresses the question of categorizing disclosed documents and Rule 26(b) disclosure requirements. "We hold that where, as here, the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the **mere acknowledgment** of the existence of those documents would reveal counsel's mental impressions, which are protected as work product. *Id.* at 1326, (emphasis added).

10.     As in this case, *Shelton* case did not involve the refusal to produce documents. As in *Shelton*, Plaintiff does not contend that any documents prepared by others or historical facts are protected as work product simply because they are in (or known) to Plaintiff's attorneys. However:

> "AMC contends that Burns' acknowledgment of the existence of documents referred to by plaintiffs' counsel would reflect her judgment as an attorney in identifying, examining, and selecting from AMC's voluminous files those documents on which she will rely in preparing her client's defense in this case. In these circumstances Burns' recollection of the documents concerning a certain subject will be limited to those documents she has selected as significant and important with respect to her legal theories. Therefore, AMC argues, requiring Burns to testify that she is aware that documents exist concerning a certain issue is tantamount to requiring her to reveal her legal theories and opinions concerning that issue. We agree."

Id. at 1328. Assembling information as an attorney sifts through what the lawyer believes are relevant facts to prepare theories and plan strategy is an attorney's work product and is reflected in interviews, statements, memoranda, correspondence, mental impressions,

personal beliefs and in countless "other tangible and intangible" ways. *Id. Shelton* made clear that trial preparation work product protected under Rule 26(b)(3) not only protected materials obtained or prepared in anticipation of litigation, but also an attorney's mental impressions, thought processes, opinions, conclusions and legal theories. "An attorney's thoughts are 'inviolate.'" *Id.*

11.     Before *Shelton*, there was *In re Murphy*, 560 F.2d 326 (8th Cir. 1977) a case presenting "sensitive and far-reaching issues regarding the extent to which an attorney's "opinion work product" is immune from discovery under Fed.R.Civ.P. 26(b)(3)." *Id.* at 329. The *Murphy* Court found that Rule 26(b)(3) codified *Hickman* and its progeny and established a qualified immunity for "ordinary work product" requiring a showing of substantial need and an inability to secure the substantial equivalent through alternative means. *Id.* at 334. Ordinary work product does not contain the mental impressions, conclusions or opinions of an attorney.  Attorney's "opinion work product" contains the mental impressions, conclusions or opinions of an attorney. *Id.* "In our view, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.* at 336.

12.     The Defendants admit that they are attempting to "depose" Plaintiff's attorney through the use of interrogatory questions that Plaintiff as a lay person cannot answer. Though not included with the Defendants' Motion, their demands came chock full of "instructions" to Plaintiff. The Defendant's instructions included that "you . . . or Plaintiff . . . shall mean LuAnn Janssen, and shall include any and all . . . attorneys, experts and investigators." Interrogatories page 2 signed by Daniel Gaustad dated May 15, 2020.  The Defendant's discovery demands are submitted in support of Plaintiff's Brief. The Defendants argue Plaintiff must answer questions even if she needs to consult

her attorneys to obtain and provide the information. Doc #67-1 page 7. The Defendants admit that their demands are not intended to be answer by Plaintiff, because her "answer would no doubt be 'I don't know'" and are intended to involve legal counsel in providing the requested information. Doc #67-1 page 13.

13.    This Motion to Compel is nothing more than the Defendants' attempt to steal Plaintiff's opinion work product concerning which of the hundreds of previously disclosed facts are relevant and apply to certain categories of legal proof as defined by the Defendants.   There is no doubt that if Plaintiff's attorneys are forced to create responses to the Defendants' demands Defendants' counsels' task will become much easier.  Even if the Defendant's demands were limited to Plaintiff's attorneys' ordinary work product they would still be protected because we must assume that the Defendants could secure the substantial equivalent information using their own attorneys experience, knowledge, mental impressions, conclusions and opinions to sift through the disclosed facts and documents to answer the questions they have posed.

14.    *Baker v. GM*, 209 F.3d 1051 (8th Cir. 2000) is another in a long line of Eighth Circuit cases applying *Hickman* recognizing the importance of protecting attorney's work product from an opposing party's discovery. *Baker* involved the magistrate judge's order that GM provide four documents containing the hand-written notes taken by GM's attorneys during interviews of Ivey, a GM employee, hand-written notes taken by a non-attorney member of GM's litigation team during an interview conducted in the presence of a GM attorney and a typed summary prepared by a GM attorney shortly after an interview. The magistrate judge rejected GM's work product assertion because "in addition to containing the legal impressions of counsel, the documents contained some factual information." *Id.* at 1053. The Eighth Circuit Court found the documents were protected by the work-product doctrine and attorney-client

6

privilege. Again, the Court noted that there are two kinds of work product. "Ordinary work product includes raw factual information.   Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories." Id. at 1054 (citation excluded).  The Court held:

> "Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. See Fed. R. Civ. P. 26(b)(3). In contrast, opinion work product **enjoys almost absolute immunity** and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

*Id.* (emphasis added).  The Court noted: "We find the judge clearly erred in holding that the documents were not protected work product. Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity." *Baker v. GM*, 209 F.3d 1051, 1054 (8th Cir. 2000).

15.     "Of course, in this Circuit it is axiomatic that, 'while historical facts are not privileged, **when those facts are collated or categorized by legal counsel** they may well be entitled to protection from disclosure under the work product doctrine.' *Lumber v. PPG Industries, Inc.,* 168 F.R.D. 641,646 (D.Minn.1996), citing *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1326 (8th Cir.1986). Indeed, in *Shelton,* the Court held that an attorney's selective review of numerous documents reflected her legal theories and thought processes, which were protected as work product. As a result, at her deposition, her attorney properly invoked the work product privilege, when she was asked to identify the particular documents which she had selectively gathered." *In re Grand Casinos Inc*., 181 F.R.D. 615, 622 (D. Minn. 1998).

16.     On its face Defendants' Interrogatory #4 demands Plaintiff disclose her attorneys' trial preparation mental impressions, conclusions, opinions and legal theories by

7

specifically asking for "communications which the plaintiff intends to rely upon at trial."
This demand is for disclosure of opinion work product. Likewise, Interrogatory #5
demands information concerning "admissions" made by the "Valley City Defendants."
This demand is puzzling. First, any statements made by the defendants that could
possibly become "admissions" must be known by defendants since they were in fact
made by the defendants. Also, for the most part almost all of the defendants contact with
Warren Lindvold on the day in question were recorded. In their Answer, Doc # 28, ¶ 42,
when responding to 162 paragraphs containing Plaintiff's very specific factual
allegations concerning the Defendants, the Defendants asserted "the
audio/video/electronic recordings/documents speak for themselves."

17.    If    as    the    Defendants    have    asserted    the    audio/video/electronic
recordings/documents speak for themselves, why do the Defendants now try to force
Plaintiff to tell them what those audio/video/electronic recordings/documents mean? Of
course the Defendants already know what Plaintiff believe they mean as set forth in her
162 paragraphs of specific factual allegations. Doc #1.

18.    Additionally, Plaintiff has deposed Officers Hannig and Olson, along with Police
Chief Hatcher, the Mercy Hospital medical providers, Mr. Klabo, Nurse Lutjens and
Nurse Archer and the Barnes County ambulance personnel, Sara Rippley, Scott Miller
and Kaitlyn Anderson, all of whom interacted with the Valley City defendants, all
parties, even Defendants should know who said what to whom. And, there is also
Plaintiff's detailed 82-page, 505 paragraph Complaint, Doc #1, with 240 paragraphs with
detailed allegations involving Defendants.

19.    The Defendants use of "admissions" must mean statements that Plaintiff's
attorneys intend to use during trial to prove Plaintiff's case. The demanded "admissions"

must require Plaintiff's attorneys to disclose their trial preparation mental impressions, conclusions, opinions and legal theories. It is clear that Defendants only reason for demanding responses is so it will know before the trial exactly how Plaintiff's attorneys intend to present the factual evidence to the jury so Defendants can prepare their defense based on the thoughts stolen from their adversaries.

20.     Defendants attempt to justify their "admission" demands with a confusing discussion of prospective witnesses and "persons with knowledge." Plaintiff assumes that since both demands #4 and #5 are limited to communications and admissions made by "the Valley City Defendants" the Defendants must know the persons with knowledge. Again, these demands are duplicative of discovery already provided. Rule 26(a) requires the disclosure of witnesses that the disclosing party may use to support its claims and defenses and requires supplementation of the initial disclosures, Rule 26(e).

21.     Interrogatory #9 again demands an explanation of how Plaintiff's intend to conduct the trial and what evidence they intend to present to the jury. Because the demand uses the word "contend" the Defendants believe that Rule 33 somehow makes the questions impervious to objection. The Rule 33 language that an interrogatory is not objectionable "merely" because it asks for an opinion or contention, is specifically limited by Rule 26(b). Rule 33 does not create a get out of jail free card concerning Rule 26(b) limits on the disclosure of attorney's trial preparation material and their work product.

22.     Defendants cite *In re Grand Casinos Inc.*, 181 F.R.D. 615 (D. Minn. 1998) for an example of a similar interrogatory. *Grand Casinos* is a securities class action case. The court specifically noted that its decision was based on the specifics of the case before it: "With this generalized backdrop, we address the issues raised by the Defendants'

Motion to Compel Discovery." *Id.* at 617. The court discusses what are commonly referred to as "contention interrogatories" finding the interrogatory in question was not a contention interrogatory but a "permissible" fact interrogatory calculated to discover the identification of witnesses. *Id.* at 618. The information requested in the *Grand Casino* interrogatory is essentially now a Rule 26(a) required initial disclosure.

23.     Ultimately the court in considering the disputed discovery determined, in line with *Shelton,* that the plaintiffs were required to disclose all documents in their possession "which concern matters of historical fact" but were not required to produce any document reflecting counsel's "thought process or mental impressions." *Id.* at 622.

24.     Nowhere does *Grand Casinos* discuss any interrogatory similar to Defendants #9.

25.     An example of the Defendants disregard for the discovery rules is Defendants' Interrogatory #8 demanding information about statements which never addresses Rule 26(b)(3)(C). Rule 26(b)(3)(C) states:

> (3) Trial Preparation: Material.
> (C) Previous Statement. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter.

This rule's "required showing" is that a statement is otherwise discoverable under Rule 26(b)(1) AND the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Rule 26(b)(3)(A) (i) and (ii).

26.     The discovery rules must be considered as a whole. Rule 26(a)(1) requires initial disclosures including the identity of witnesses the party may use to support its claims. The initial disclosures must be supplemented. Plaintiff in accordance with the Rule

26(a)(1) has disclosed the identity of witnesses it may use to support her claims. The Defendants knew who those witnesses were before serving their interrogatories,

27.    Rule 26(b)(1) then defines the general scope of allowable discovery. The remaining parts of Rule 26(b) limit the general scope of discovery. Rule 26(b)(2) limits the frequency and extent. Rule 26(b)(3)(A) protects attorney's trial preparation documents and tangible things prepared in anticipation of litigation or trial from discovery except for certain "substantial need" exceptions in Rule 26(b)(3)(A) (i) and (ii). Rule 26(b)(3)(B) extends additional protection, even when the "substantial need" exceptions are met. The *Hickman* work product protection extends to an attorney's mental impressions, conclusions, opinions, or legal theories. Rule 26(b)(3)(C) carves out a narrow exception to the trial preparation material protection to allow a person or party, without showing the required substantial need to obtain "the person's own previous statement about the action or its subject matter."

28.    Generally, statements taken by attorney's or the attorney's agents in anticipation litigation or for trial are Rule 26(b)(3) protected trial preparation material and exempt from discovery unless the opposing party makes the required showing. The Defendants in this case have not even attempted to make the required showing of substantial need. A careful analysis of the Defendants demand shows that they are only an attempt to obtain Plaintiff's attorney's mental impressions, conclusions and opinions.

29.    What additional factual information do the Defendants obtain if Plaintiff is compelled to answer? Plaintiff has already disclosed the identity of witnesses it intends to call to support her claims in her Rule 26 initial disclosures. No historical facts (identification of witnesses) is being withheld from the Defendants. The demand is limited to written or recorded statements taken by Plaintiff's attorneys or agents (we

assume the Defendants would agree that our investigators are our agents), the content of which is protected trial preparation material. The subpart demanding who took the statement is irrelevant, since the disclosure is limited to statements taken by Plaintiff's attorneys or agents. Subpart d is also irrelevant since the demand is limited to statements taken by Plaintiff's attorneys or agents; it seems evident on its face that Plaintiff's attorneys would possess any statement they had taken.  As a side note Rule 26(a) specifically limits witness and document disclosures unless the witness or document would solely be used for impeachment.  By its express language Rule 26(a)(1) recognizes impeachment witness and prior written statements (a document) intended to be used only for impeachment are non-discoverable protected trial preparation material not required to be disclosed.

30.    The only information the Defendants can obtain from Plaintiff's attorneys in response to this demand is the name of the person interviewed.  The determination of who the Plaintiff's attorneys have decided to interview out of the more than 100 people that have been identified in initial disclosures and subsequent discovery is and must be a product of the attorneys' mental impressions, conclusions and opinions concerning the ligation.  The process of an attorney determining which people, from the class of all potential witnesses that has have been identified in initial disclosures, that the attorneys will use their limited resources of time and money to interview, is exactly the same as the work product protected in *Shelton* involving which documents out of all the relevant documents disclosed will the attorney choose to review and analyze.

31.    While the information contained in a witness' memory is not a document, the process of converting that memory into a "written or recorded" statement is the process of creating a document.

32.     It has long been recognized in the Eighth Circuit that if a witness is available to the party seeking discovery the witness' statement to opposing counsel should not be discoverable. In re Grand Jury Proceedings, 473 F.2d 840, 849 (8th Cir. 1973)

33.     Defendants seem to misunderstand the nature of Plaintiff's trial preparation work product objection.   Plaintiff's objections are detailed and specific to the demands intended to invade Plaintiff's attorneys' work product protection.

34.     Plaintiff's objection clearly states that the documents requested have been disclosed.   This Motion has nothing to do cards being held close to the vest, trial by ambush or the withholding of "factual" information "which is relevant or may lead to the discovery of admissible information." The extent of Plaintiff's transparency in disclosing factual information is shown in part by the extensive Rule 26 Disclosures provided by the Plaintiff to all defendants.   While Rule 26(a)(1)(A)(iii) only requires a description by category and location of documents, Plaintiff chose the "a copy" option and provided copies of the more than 3688 pages of documents on flash drive for all defendants. *See*, Plaintiff's Rule 26 Disclosures dated September 16, 2019.

35.     Defendants also raises a school of red herring in their claim that Plaintiff has somehow "waived" it work product claim because the documents containing the factual information concerning the case have been disclosed.  The documents disclosed through Rule 26(a) disclosures and responses to specific prior discovery requests for factual information were not created by Plaintiff's attorneys. Those documents are almost exclusively created by defendants or third parties and obtained by Plaintiff through records requests. Those documents such as state toxicologist documents (bates 1 – 53), autopsy reports ( 54 – 63), Barnes County Ambulance records ( 64 – 84), North Dakota Department of Correction and Rehabilitation records (85 – 164 and 1222 - 1557), Mercy

Hospital billing records (165 – 168), Sanford billing records ( 169 – 193), Valley City police department records ( 194 – 1201),  Valley City Municipal Court records ( 1202 – 1210), Cass County State's Attorney's records ( 1211 – 1220), Probate Court records (1221), Barnes County Sheriff's office and jail records (1222 – 2809 and 2902 – 3674 and 3675 - 3679), North Dakota Bureau of Criminal Investigation records (2810 – 2901), Letter from attorney Gaustad ( 3683 – 3688) along with medical record and other documents.

36.    Cases cited by the Defendants do not support their position.  In *Pepsico Inc. v. Baird Kurtz Dobson LLP*, 305 F.3d 813 (8th Cir. 2002) (Doc # 67-1) the magistrate judge found that quality control assessments created Marion Pepsi-Cola Bottling Corporation's accounting firm by before Pepsico started its lawsuit against Marion were not protected work product and the district court found that the quality control assessments after the lawsuit  began were protected work product. Id. at 817. The Eighth Circuit held the prelitigation assessments were not protected work product and the post litigation assessments were protected work product. The Court also considered Pepsico's "substantial need" argument.  The quote relied on by Defendants in its brief was taken from the Eighth Circuit's discussion of Pepsico's substantial need argument, which the Court rejected. The Court cited *Baker v. GM*, 209 F.3d 1051 (8th Cir. 2000) in its discussion of protected work product.

37.    Defendants argue that Plaintiff faces a "heavy burden" to support its work product protection.  Defendant admits there are no Eighth Circuit cases that define the "heavy burden."  The reason there are no Eighth Circuit cases is because the Eighth Circuit does not impose a heavy burden on Plaintiff when asserting the strong public policy that prevents disclosure of an attorney's work product.  The "heavy burden" in

this Court is on the Defendant to prove "substantial need" and the inability to obtain the "substantial equivalent" information when attempting to obtain protected ordinary work product. The Eighth Circuit cases are clear. Once Plaintiff establishes that the information was prepared in anticipation of litigation it is protected under Rule 26(b)(3) (A) and (B) from disclosure as trial preparation material. In this case, as opposed to cases involving businesses records or investigations, all of Plaintiff's attorneys' involvement in the case occurred after Warren Lindvold's death in anticipation of litigation and preparation for trial.

38.     Defendants pretended reliance on *Vallejo v. Amgen Inc*., 903 F.3d 733, (8th Cir. 2018) is misplaced. *Vallejo* involved only claims of undue burden and lack of proportionality, not work product or duplication of requests.

39.     Interrogatories 22, 23, 24 and 25 concerning Plaintiff's Complaint paragraphs 88, 116, 196 and 234 demands Plaintiff disclose her "factual basis" relating to a specific allegation. Again the Defendants expect Plaintiff's attorneys to answer this legal based questions. The attorneys can only answer the demand by sifting through all the previously disclosed historical facts using their personal beliefs, mental impressions, thought process and opinions.

40.     The Defendants cherry pick a quote out of context from *Sprint Communications Company L.P. v. Crow Creek Sioux Tribal Court*. 316 F.R.D. 254 (D.S.D. 2016), Doc 67-1 page 9. The court actually said:

> When properly used, contention interrogatories can be helpful " in that they may narrow and define the issues for trial and enable the propounding party to determine the proof required to rebut the responding party's claim or defense." *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006). **But broadly phrased contention interrogatories that require a lengthy narrative explaining a party's claims or defenses can be oppressive or unduly burdensome, and " '[a] litigant may not compel his adversary to go to work for him.'"** *Poulos v. Summit Hotel Props., LLC*, No. Civ 09-4062-RAL, 2010 WL

15

2640394 at *2 (D.S.D. July 1, 2010) (quoting *Breeland v. Yale & Towne Mfg. Co.*, 26 F.R.D. 119, 120 (E.D.N.Y. 1960)).

Id at 272. This case is not a carte blanch endorsement of so called "contention interrogatories." Rather it confirms that you cannot compel your adversary to do your work for you. *See, Phillips v. City of New York*, 230 F.R.D. 369, 370 (S.D.N.Y. 2005) (The court finds no basis in law to support a determination that detailed disclosure of defendant's theory of their cross-claim in the form CHB requests by way of contention interrogatories is compelled by the Federal Rules or any applicable law.); *Aktiebolaget Vargos v. Clark*, 8 F.R.D. 635, 636 (D.D.C. 1949) (A litigant may not compel his adversary to go to work for him. Specifically, an interrogatory calling upon an adverse party to enumerate the items of evidence by which the latter expects to prove some ultimate fact is objectionable. It is likewise objectionable to demand by interrogatory a list of witnesses whom the adverse party expects to call at the trial to prove some specific fact.)

41.     In contrast to *Sprint* and more recently the court in *Poulos v. Summit Hotel Properties LLC*, CIV 09-4062-RAL, ROSS 10749817 (D.S.D. Jul. 01, 2010) stated:

> In his brief in opposition to Summit's motion, Poulos argues that Summit, by seeking discovery beyond the responses and documents already provided, **essentially asks Poulos to prepare Summit's trial notebook for it and compile documents in the form Summit requests**. The Court finds that the discovery rules do not require Poulos to engage in such activities. Indeed, "interrogatories are not to be used in an oppressive manner. An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data. A litigant may not compel his adversary to go to work from him.

*Id.* at page 3.(emphasis added)

42.     *Gilmore v. City of Minneapolis*, Document 67-1 page 9, neither supports nor discusses the type of demand contained in Defendants Interrogatories 22, 23. 24 and 25. Defendants' brief lacks specific citation to the "quoted" blurbs, forcing a discriminating reviewer to search the full 12 page decision. In *Gilmore* the Defendants mis-quote the

Court decision to overruled the magistrate judge that required the party to " 'specify the statutes or other legal authority supporting their position' and produce 'relevant legal authorities' in response to Gilmore's interrogatories because requiring a party to produce relevant legal authorities goes beyond the permissible scope of a contention interrogatory and constitutes protected work product. " *Gilmore v. City of Minneapolis*, Civil No. 13-1019 (JRT/FLN), at *10 (D. Minn. Sep. 21, 2014). Critically the first blurb related to Rule 33 stops before the court's limiting statement: "Rule 26(b), in turn, provides that '[p]arties may obtain discovery regarding **any nonprivileged matter** that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). Privileged matter includes work product materials, which are materials containing "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.' Fed. R. Civ. P. 26(b)(3)(B); *see also Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947)." *Gilmore* at *9. The second blurb is mere dicta. Defendants' cleverly edited quoted sentence begins: "With respect to these various categories of questions courts have generally held that . . ." *Id.* at *10 (None of the courts cited are Eighth Circuit courts.) While the court engages in a general discussion of "contention interrogatories" that it describes as "used inconsistently" and "imprecisely", *Id.* at *9, the actual issue being resolved was "Gilmore's motion to compel was "an order requiring defendants to identify with specificity which laws and legal authority they are relying upon to support their defenses that the arresting officers were justified and had probable cause to arrest plaintiff" (Pl.'s Mem. in Supp. of Mot. to Compel at 8), and that was the only issue related to the motion to compel addressed by the Magistrate Judge (*see* Order at 4-5). Id. at *14 n.2. It is a very long stretch to see how this case that reverses the magistrate's judge's order, compelling defendant to provide a specific

answer to a contested question, supports Defendants' attempt to circumvent Plaintiff's attorneys' trial preparation work product privilege.

43.    It becomes clear that Defendants cannot find any Eighth Circuit cases to support its requested expansion of allowable discovery at the expense of Plaintiff's trial preparation work product privilege. Defendants use of *Exxon Research and Engineering Co. v. United States*, 44 Fed.Cl. 597 (Ct. Cl. 1999) does not support their argument. *Exxon* is a 1999 patent infringement case where the issues was whether a 30(b)(6) deposition or contention interrogatories are more appropriate is decided on the facts of each case.  Exxon preferred to answer "contention interrogatories" rather than being forced to submit to a Rule (30)(b)(6) deposition.

44.    The Defendants seek to criticize *Shelton* with dispersions cast by other courts outside the Eighth Circuit. In effect the Defendants are asking the Court to abandon the settled law concerning work product in the Eighth Circuit in search of what the Defendants would describe as greener pastures. Plaintiff simply asks that the Court apply the established and accepted Eighth Circuit law to the issues before it.

45.    The *Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267 (D. Neb. 1989) involved a Rule 37 motion to compel answers in a Rule(30)(b)(6) deposition. In its discussion of work product protection, the court stated:

> There is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel. But, depending upon how questions are phrased to the witness, deposition questions may tend to elicit the impressions of counsel about the relative significance of the facts; opposing counsel is not entitled to his adversaries' thought processes. Id. at 258-262. Here the effort must be to protect against indirect disclosure of an attorney's mental impressions or theories of the case.

Id. at 280. Unfortunately the Court was influenced by an prior 1962 eastern district of Pennsylvania case, *Lance, Inc. v. Ginsburg,* 32 F.R.D. 51 (E.D.Pa.1962) which is inconsistent with the controlling Eighth Circuit precedent. *Id.* at 281.

46.    The Defendant's continued dispute with the supplemental answers to Interrogatory 18 establish beyond doubt that the Defendants are enamored with form over substance. The Defendants are obsessed with receiving a supplemental response to Interrogatory 18, after Plaintiff provided a detailed and specific response to Interrogatories 10 and 12.  The defendants do not dispute the appropriateness of the response to Interrogatories 10 and 12.

47.    Unfortunately, this demand that Plaintiff's repeatedly repeat previously disclosed factual information seems to be driving all aspects of the Defendant's Motion to Compel. It is not enough that Plaintiff's have disclosed all historical facts to the Defendants, now the Defendants insist that the Plaintiff's disclosure their trial preparation conclusions and opinions and explain the legal significance of the historical facts to the Defendants.

48.    It seems odd that the Defendants raise this issue with out attaching Plaintiff's Supplemental Answers dated September 4, 2020 containing the detailed itemized information the Defendants demanded.  For the Court's consideration the Plaintiff's Supplement Answers are attached.

49.    The supplemental answer to Interrogatory #10 and #12 were put in a separate document rather than repeating all of the prior answers and objections which were not changed by the September 4, 2020 supplemental answers. The original response to Interrogatory 12 was an objection.  The supplemental answer states: "Without waiving the above objection Plaintiff provides the following information. All the requested information is contained in the Supplemental Answer to Interrogatory no. 10."  The

Defendants, at least up until now have not expressed any dissatisfaction with the supplemental answer to Interrogatory #12.

50.     The original answer to Interrogatory 318 was: "See Plaintiff's Rule 26 Disclosures and responses to your Interrogatories number 10 and 12." Since a review of Interrogatory 18 shows that it asks for exactly the same information demanded in Interrogatory 10. Since Interrogatory 10 has been supplemented and now contains all of the demanded information, Interrogatory 18 does not need any supplementation. See Interrogatory 10 is now a complete, correct and accurate answer.

51.     Now the Defendants complain to the Court that somehow Plaintiff could at a later date disavow that her supplemental responses to interrogatories 10 and 12 were not applicable to her earlier August 3rd response. While this allegation is creative it is simply absurd. However, this demand is instructive of the point that there is nothing about the Defendants motions that have to do with obtaining the historical facts concerning this case, but establish that Defendants goals are twofold: 1. To obtain Plaintiff's attorney's litigation preparation and trial strategy; and 2. To waste Plaintiff's time and resources.

52.     Plaintiff requests that the Court deny the Defendants' Motion.

Dated this 2nd day of October, 2020.

/s/ Alan Baker_____          /s/ Rachel M. Gehrig_____
Alan Baker (ND ID #04122)                   Cash H. Aaland (ND ID 04686)
Attorney for Plaintiff                      Rachel M. Gehrig (ND ID 06869)
Southwood Plaza, Ste. 202                   Attorneys for Plaintiff
1336 25th Ave. S.                           Aaland Law Office, Ltd
Fargo, ND 58103                             415 11th St. S.; P.O. Box 1817
Telephone: 701-630-1846                     Fargo, ND 58107-1817
al@elawpros.com                             Telephone: 701-232-7944
*Attorney for Plaintiff*                    officemanager@aalandlaw.com
                                            *Attorney for Plaintiff*

20